## PERRY v. TONOPAH MINING CO. OF NEVADA.

(District Court, D. Nevada. October 8, 1915.)

No. 1876.

1. **Negligence ⬤=31—Failure to safeguard excavation, as required by statute, is negligence as matter of law (Rev. Laws Nev. § 3233).**

Rev. Laws Nev. § 3233, providing that the owner of any shaft, excavation, or hole shall erect and keep in repair substantial safeguards around it, sufficient to securely guard against danger to persons or animals from falling into such excavation, imposes a positive duty on such owner, nonperformance of which, resulting in injury, is negligence as matter of law, for which, in the absence of contributory negligence, recovery may be had.

2. **Negligence ⬤=39—Owner of unguarded premises, attractive to children, owes duty of reasonable care to protect child from injury from excavation.**

A boy 7 years old is incapable of contributory negligence, nor is he chargeable in law as a trespasser in going on unguarded premises, which offer attractions to children of his age, and the owner, aside from statute, owes to such child the duty to use reasonable care to protect him from injury from an excavation thereon.

3. **Death ⬤=11—Right of action for death must be given by statute.**

Whatever standing a plaintiff has to maintain an action for damages for wrongful death, not recoverable at common law, must be found in the statutes of the state giving the remedy.

4. **Death ⬤=31(7)—Under Nevada statute, father cannot maintain action for death of minor as administrator, but only in his own right (Rev. Laws Nev. §§ 4996, 5647, 5648).**

Under Rev. Laws Nev. §§ 5647, 5648, providing as to actions for wrongful death in general that "every such action shall be brought by and in the name of the personal representative * * * of such deceased person," the proceeds to be distributed as specified, and section 4996, providing that "a father or, in case of his death or desertion of his family, a mother, may maintain an action for the death or injury of a minor child," the remedy of a father for death of his minor child was in his own right and exclusive, and he could not maintain an action for the death as administrator.

At Law. Action by Charles E. Perry, administrator of the estate of Charles Hale Perry, deceased, against the Tonopah Min-

13 F.(2d)—55

ing Company of Nevada. On demurrer to complaint. Sustained on one ground, and plaintiff given time to plead anew.

Wm. Forman, of Tonopah, Nev., and J. A. Sanders, of Carson City, Nev., for plaintiff.

Hugh H. Brown and J. H. Evans, both of Tonopah, Nev., for defendant.

FARRINGTON, District Judge. The allegations of the complaint are in substance as follows:

Defendant company is the owner of the Silver Top and Valley View mining claims, situated in Tonopah, near the well-traveled and principal streets, and adjacent to a thickly-settled part of the town. Near a path leading across these claims from Florence avenue to defendant's mines there were at the time of the accident a number of open shafts and excavations; among them, and not far from the Silver Top working shaft, was an old abandoned stope, from which ore had been removed to the surface, leaving a large opening, about 140 feet deep, which defendant had wrongfully and negligently suffered "to be and remain unfenced, and without any safeguards whatever to guard against danger to persons, and particularly children, from falling into the same," and without giving "any warning or notice whatever to persons, and particularly children."

"That said mining claims named, owing to their close proximity to the thickly settled and populous residence part of said town of Tonopah, and on account of their being vacant ground, and few, if any, buildings thereon, became and were an attractive place for children to play, and that children for a long time prior to August 29, 1914, and up to and including said date, habitually frequented said claims and played thereon and therein. That defendant, its officers and agents, were at all times fully cognizant of the foregoing facts, and of the use and purposes to which said claims were being put and used by the workmen and children and others, and suffered and permitted the said claims to be so used by workmen in going to and from work as aforesaid, and suffered and permitted children to play and frequent in and upon said claims aforesaid.

"That on the 29th day of August, 1914, the deceased, Charles Hale Perry, a boy as aforesaid of the age of seven years, was then and there attracted to said Silver Top and Valley View claims, by their appearance and surroundings, as a place of play, and said deceased was too young and inexperienced

to foresee the danger therefrom, and while he and a boy companion of about the age of five years were playing near the above-described stope and excavation, and by reason of the defendant's failure to exercise ordinary care, and by reason of the wrong and negligence of the defendant, its officers and agents, as. aforesaid, and by reason of its failure to use ordinary care to guard against danger to persons from falling into said stope or excavation, the said Charles Hale Perry, while so playing, fell into and down said stope or excavation, to a depth of about 65 feet, and was instantly killed."

It is also alleged that the deceased left him surviving his father, Charles E. Perry, his mother, Jennie T. Perry, and his three sisters, Ella May Perry, Gladys Gene Perry, and Mary Susan Perry, and that the plaintiff, Charles E. Perry, is the duly qualified and acting administrator of the estate of said deceased.

Defendant by its demurrer raises a number of questions, only two of which have been argued. First, that the complaint does not state facts sufficient to constitute a cause of action; and, second, that plaintiff has no legal capacity to sue.

[1] The danger from open cuts on premises similar to those described in the complaint is obvious. It was the likelihood of just such conditions which prompted the Legislature of this state in 1866 to adopt what is now section 3233 of the Revised Laws of Nevada, and what was then entitled "An act to secure persons and animals from danger arising from mining and other excavations." The first section of the act declares that "any person, * * * corporation [or corporations], * * * being the owner * * * of any shaft, excavation, or hole, whether used for mining or otherwise, * * * within this state, shall, during * * * excavating, or after they may have ceased work upon or abandoned the same, erect * * * substantial * * * safeguards, and keep the same in good repair, around such * * * shafts, sufficient to securely guard against danger to persons and animals from falling into such * * * excavations."

Every owner of property in this state holds the same subordinate to the regulative power of the Legislature. When the Legislature, in the interest of public safety, and for the protection of life and property, required every owner of such an excavation to fence it, it imposed on him a positive, absolute duty, nonperformance of which, resulting in injury, is negligence as a matter of law, for which, in the absence of contributory negligence, a recovery may be had. This was held in a case where the owner of a canal passing through the city of Denver had failed to protect and cover it, as required by statute. A 14-year old boy, in some unexplained way, fell into the canal, and was drowned. A judgment in favor of the plaintiff was sustained. Platte & Denver Canal & Milling Co. v. Dowell, 17 Colo. 376, 30 P. 68.

In Williams v. Great Western R. Co., L. R. 9 Exch. 157, a child was found mutilated on a footpath crossing the railway, where no gate or stile had been. erected by the company, as required by law. The question was raised as to whether there was any evidence of negligence on the part of the defendant. The court held that the failure of the defendant to comply with the statute was sufficient, and that the case should be submitted to a jury. To the same effect see: Sluder v. St. Louis Transit Co., 189 Mo. 107, 88 S. W. 648, 5 L. R. A. (N. S.) 187; Wolf v. Smith, 149 Ala. 457, 42 So. 824, 9 L. R. A. (N. S.) 338; Richardson v. El Paso Con. G. Mg. Co., 51 Colo. 440, 118 P. 982, 986; Conway v. Monidah Trust Co., 47 Mont. 269, 132 P. 26, 27, L. R. A. 1915E, 500.

The Supreme Court of this state had held, in the case of Anderson v. Feutsch, 31 Nev. 501, 510, 105 P. 99, 100, that "the great purpose of the act [quoted above] was to protect persons and animals from injury resulting from falling into unprotected excavations." The protection intended by the act was for the public generally, and the boy, Charles Perry, was one of those for whose benefit the statute was enacted and designed, and the defendant owed a duty to him to inclose the excavation in question. Richardson v. El Paso Con. G. Mg. Co., 51 Colo. 440, 118 P. 982, 985.

In Erb v. Morasch, 8 Kan. App. 61, 54 P. 323, a child of 34 months was run over and killed by defendant's passenger train. At the time the train was running within the city limits at a rate of speed forbidden by ordinance. The child was technically a trespasser, because it was on the unfenced tract, not at any street crossing, and without license from the company. For this reason, defendant contended that it owed the child no duty except to refrain from wanton or willful injury. The court, however, held that the ordinance was for the protection of citizens who might be upon the railroad track outside of the highway, and, while the company was entitled to the exclusive use of its tracks at the point where the accident

occurred, it owed the infant, as well as the public generally, the duty not to run its trains at a speed which was forbidden by law.

[2] In this case Charles Perry is alleged to have been but 7 years old at the time of his death. This is a sufficient allegation of fact from which the court may draw the conclusion that he lacked that discretion which would make him responsible for his conduct, and that he was therefor incapable of contributory negligence, or of being a trespasser. In Shearman & Redfield on Negligence, § 705, the rule is thus stated: "The owner of land where children are allowed or accustomed to play, particularly if it is unfenced, must use ordinary care to keep it in a safe condition, for they, being without judgment and likely to be drawn by childish curiosity into places of danger, are not to be classed with trespassers, idlers and mere licensees." Cœur d'Alene Lumber Co. v. Thompson, 215 F. 8, 131 C. C. A. 316, L. R. A. 1915A, 731; Snare & Triest Co. v. Friedman, 169 F. 1, 94 C. C. A. 369, 40 L. R. A. (N. S.) 367; Chesko v. Delaware & Hudson Co., 218 F. 804, 134 C. C. A. 492; St. Louis & S. F. R. Co. v. Underwood, 194 F. 363, 114 C. C. A. 323.

Apart from the statute, there is much respectable authority for the proposition that a child of such tender years, allured to private, uninclosed premises by some object calculated to excite his curiosity, cannot be regarded as a trespasser. The owner is bound, under such circumstances, to use reasonable care to protect such child from injury. He may thus owe a duty to a child where, under similar conditions, none would be due an adult. I cannot yield my assent to the proposition that defendant owed no duty to the lad, Charles H. Perry, except to abstain from inflicting willful and wanton injury.

The following extract from Tucker v. Draper, 62 Neb. 66, 73, 86 N. W. 917, 920, 54 L. R. A. 321, 326, is quoted with approval by Judge Morrow in the Cœur d'Alene Lumber Co. Case, supra: "If I know that there is an open well upon my premises, and know that children of such tender years as to have no notion of their danger are continually playing around it, and I can obviate the danger with very little trouble to myself, and without injuring the premises, or interfering with my own free use thereof, I owe an active duty to those children; and if I neglect that duty, and they fall into the well and are killed, it is through my negligence. I cannot urge their negligence as a defense, even though I have never invited or encouraged

them expressly or impliedly to go upon the premises."

In Union Pac. Ry. Co. v. McDonald, 152 U. S. 262, 14 S. Ct. 619, 38 L. Ed. 434, the railway company operated a coal mine, and was in the habit of depositing the slack on an open lot belonging to it, between the mine and the station, in such quantities that the slack was in a permanent state of combustion, a fact known to the servants of the company. The lot was open and unguarded. A lad 12 years of age, in running across this lot, fell onto the slack and was badly burned. It was held the boy was not a trespasser, under the circumstances, and had not been guilty of contributory negligence.

[3] The next question presented by the demurrer is whether, under the facts disclosed in the complaint, the action can be maintained by the father as administrator? The common law afforded no remedy in damages for a wrongful death. Whatever standing plaintiff has in the present case must be found in the statutes of Nevada. The remedy, being wholly statutory, is exclusive. The statute provides the only measure of damages, and designates the only persons who can maintain such an action. Salmon v. Rathjens, 152 Cal. 290, 92 P. 733, 735; Oates v. Union Pac. Ry. Co., 104 Mo. 514, 16 S. W. 487, 24 Am. St. Rep. 348; Fithian v. St. Louis & S. F. Ry. Co. (C. C.) 188 F. 842; Florida East Coast Ry. Co. v. Jackson, 65 Fla. 393, 62 So. 210.

[4] Plaintiff has brought this action as the administrator of the estate of his son, under sections 5647 and 5648 of the Revised Laws of Nevada. Defendant contends the action cannot be maintained by the administrator, but must, if maintainable at all, be brought under section 4996, which confers on the parents the right to sue for the death or injury of a minor child. Sections 5647 and 5648, as originally enacted in 1871, and as they remained until the Revised Laws became effective in 1912, read as follows:

"3983. Section 1. Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the persons who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured; and although the death shall have been caused under such circumstances as amount in law to a felony."

"3984. Sec. 2. The proceeds of any judgment obtained in any action brought under the provisions of this act shall not be liable for any debt of the deceased: Provided, he or she shall have left a husband, wife, child, father, mother, brother, sister, or child or children of a deceased child; but shall be distributed as follows:

"First—If there be a surviving husband or wife, and no child, then to such husband or wife; if there be a surviving husband or wife, and a child or children, or grandchildren, then, equally)to each, the grandchild or children taking by right of representation; if there be no husband or wife, but a child or children, or grandchild or children, then to such child or children and grandchild or children by right of representation; if there be no child or grandchild, then to a surviving brother or sister, or brothers or sisters, if there be any; if there be none of the kindred hereinbefore named, then the proceeds of such judgment shall be disposed of in the manner authorized by law for the disposition of the personal property of deceased persons: Provided, every such action shall be brought by and in the name of the personal representative or representatives of such deceased person; and, provided further, the jury in every such action may give such damages, pecuniary and exemplary, as they shall deem fair and just, and may take into consideration the pecuniary injury resulting from such death to the kindred as herein named."

Cutting's Comp. Laws, §§ 3983, 3984.

Under the foregoing statutes, no action for wrongful death could be maintained except by and in the name of the personal representative of the deceased. The jury could give such damages, pecuniary and exemplary, as they deemed fair and just, and might take into consideration the pecuniary injury resulting from such death to the kindred named in the act.

In the scheme for distributing the proceeds of the judgment, no provision is made for surviving parents; the surviving husband or wife, children, and grandchildren, if any, were entitled to the entire proceeds; if there were no surviving spouse, child, or grandchildren, the proceeds were to be given to the surviving brothers and sisters; and, finally, if there were none of the kindred named, the proceeds were to be disposed of in the manner authorized by law for the disposition of personal property of deceased persons. Manifestly, such a scheme of distribution often operated unjustly, particularly when the deceased was the only support of his parents.

In order to correct this discrimination, sections 4996 and 4997 were added to the Civil Practice Act, and the act of 1871 was amended. This legislation, both original and amendatory, was incorporated in the Revised Laws of 1912, and became effective at the time the revision was put in force. The two new sections read as follows:

"4996. Sec. 54. A father, or, in case of his death or desertion of his family, the mother, may maintain an action for the death or injury of a minor child, when such injury or death is caused by the wrongful act or neglect of another; and a guardian may maintain an action for the injury or death of his ward, if the ward be of lawful age, when such injury or death is caused by the wrongful act or neglect of another, the action by the guardian to be prosecuted for the benefit of the heirs of the ward. Any such action may be maintained against the person causing the injury or death, or, if such person be employed by another person who is responsible for his conduct, also against such other person."

"4997. Sec. 55. When the death of a person not a minor is caused by the wrongful act or neglect of another, *his heirs,* or his personal representatives for the benefit of his heirs, may maintain an action for damages against the person causing the death, or, if such person be employed by another person who is responsible for his conduct, then also against such other person. If such adult person have a guardian at the time of his death, only one action can be maintained for the injury to or death of such person, and such action may be brought by either the personal representatives of such adult person deceased for the benefit of his heirs, or by such guardian for the benefit of his heirs as provided in section 54. In every action under this and the preceding section such damages may be given as under all the circumstances of the case may be just."

The amendment to section 4996 (St. 1913, p. 27, c. 35) is not material to this discussion, and need not be considered. The act of 1871 (Cutting's Comp. Laws, §§ 3983, 3984; Rev. Laws 1912, §§ 5647, 5648) was amended, so as to prefer the surviving father or mother to surviving brothers and sisters, and to award to the parents the proceeds of any judgment for wrongful death, provided there were no surviving husband, wife, children, or grandchildren. The underscored clause in the *following* excerpt from the statute will suffice for an understanding of the change:

"The proceeds of any judgment * * * shall be distributed as follows:

"1. If there be a surviving husband or wife, and no child, then to such husband or wife; if there be a surviving husband or wife, and a child or children, or grandchildren, then, equally to each, * * *; if there be no husband or wife, but a child or children, or grandchild or children, then to such child or children and grandchild or children; * * * *if there be no child or grandchild, then to a surviving father or mother;* if there be no father or mother, then to a surviving brother or sister, or brothers or sisters, if there be any."

The various provisions for the benefit of the father and mother were adopted and became effective at the same time; consequently they must be construed together as parts of the same act, so that each may be given effect, if possible. When two statutes are irreconcilable in any respect, the earlier must give way to the later, even though both are included in the same authorized revision.

This rule, however, cannot be so applied as to nullify or destroy the amendment made to the act of 1871 for the benefit of parents. Section 4996 permits the parent to bring an action in his own right for the death or injury of a minor child. The proceeds are his. It also permits a guardian to maintain an action if his ward be of lawful age, but the benefits accruing from the action go to the heirs of the ward. The act of 1871 provides that every such action shall be brought by and in the name of the personal representative of the deceased. This language is sufficiently comprehensive to cover every case, but, as the earlier and more general expression, it must give way to the clearly expressed intention of the Legislature in the later section (4996) to confer a special right of action on parents and guardians. There was no express attempt to repeal the act of 1871, or to carve out of it all rights of recovery which might accrue to a father or mother. Such a conclusion is impossible, in view of the amendment made thereto in 1912, with the practical re-enactment of the old act as amended, providing that the proceeds of any judgment obtained by the personal representative shall, under certain conditions, become the exclusive property of the parents.

In the case of Mayhew v. Burns, 103 Ind. 332, 2 N. E. 795, the Supreme Court of Indiana had under consideration two sections of the Code of that state (Rev. St. 1881), which, as far as pertinent were as follows:

"Sec. 266. A father (or, in case of his death, or desertion of his family, or imprisonment, the mother) may maintain an action for the injury or death of a child. * * * *"

"Sec. 284. When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter. * * * The damages * * * must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed. * * * *"

It was held that section 266 gives to the parent, sustaining an injury by the death of his child, a remedy in his own right, and that he may recover the value of the child's services from the time of the injury until majority, and to this may be added, in particular cases, expenses made necessary by the injury—funeral expenses and medical services—and that the amounts so recovered belong exclusively to the parent in his own right. The court added: "When the death wrongfully caused is that of a child owing service to the parent, the pecuniary interest which its next of kin can have in its life is so remote, and subject to so many contingencies, that it would be little less than speculation to say they had any which could afford the basis for estimating damages upon. In such case the right of action is in the parent or guardian, under section 266. Where the wrongful act or omission occasions the death of an adult, or one not in the service of his parent, or in whose life a widow, children, or next of kin may, on account of their relation or situation, have a pecuniary interest as such, the right of action is in the personal representative for their benefit, and in such case the right is exclusively under section 284."

In an earlier Indiana case, Ohio, etc., Ry. Co. v. Tindall, 13 Ind. 366, 74 Am. Dec. 259, where it was contended that the two sections referred to above were repugnant and the former repealed by the latter, the same court held that the two statutes could be reconciled and given effect by holding the latter applicable to the case of adults, and the former to infants. This interpretation, however, is impracticable in the present case, because the Legislature provided in section 4997 for actions in case the deceased is not a minor, and, notwithstanding this, re-enacted the statute of 1871, providing that the action should be brought in the name of the personal representative in every case.

In 1873 the territory of Washington

(Acts 1873, p. 4, § 9) adopted an act providing that a father, or, in case of the death or desertion of his family, the mother, may maintain an action for the injury or death of the child, and the guardian for the injury or death of his ward. An amendatory act of 1875 (Acts 1875, p. 4, § 4) provided that, when the death of a person is caused by a wrongful act, his heirs or personal representatives may maintain an action, and that in every such action the jury may give such damages, pecuniary or exemplary, as under all the circumstances of the case may to them seem just. These two sections were construed by the Supreme Court of Washington in the case of Hedrick v. Ilwaco Ry. & Nav. Co., 4 Wash. 400, 30 P. 714. It appeared that, after Hedrick, as administrator, had recovered a judgment of $2,000 for the negligently caused death of his 5-year old son, he brought a second action against the defendant company to recover damages for loss of the services of his son during minority. The defendant urged that the act of 1875 repealed the act of 1873, and that no action for the death of the child could be maintained by any one except the administrator. The court, however, arguing that two causes of action may spring from one wrongful act, because two distinct injuries are inflicted, and that the actions might be prosecuted in different rights, and the damages given upon different principles, held that the parent might recover for the loss of services of the child during minority, and that such damages would belong to the parent in his own right, and were not distributable among the heirs; that the administrator could recover for the loss to the child's estate accruing after he had obtained his majority.

It is perhaps worthy of note in this connection that, under the statutes of Washington, no action for a personal injury to any person causing his death is abated by reason of death, and consequently there may be a recovery for the benefit of the estate. The Nevada statute does not profess to continue or revive an action which the injured person might have maintained if death had not ensued. That right of action is extinguished by death. What the statute does give is a new and independent right of action to the kindred who are injured by the death. It is a right of action which has no existence until the death of the injured party, and results therefrom. It makes no account of wrong done to the deceased; it is only concerned with the loss to the relatives. Brown v. Chicago & N. W. Ry. Co., 102 Wis. 137, 77 N. W. 748, 78 N. W. 775, 44 L. R. A. 579;

Whitford v. Panama R. R. Co., 23 N. Y. 465.

Our Practice Act confers a right of action on the parent for the death of a minor child; upon the guardian for the death of his ward, if of lawful age; upon the heirs or personal representatives for the death of a person not a minor. These provisions, however, do not cover the whole field of injuries which may result from wrongfully caused death. For instance, a boy of 20 years may at the same time be maintaining a wife, supporting his parents, and assisting his brothers and sisters. In such a case all would suffer pecuniary injury by reason of his death, but there could be no recovery by the widow, brothers, and sisters, except under sections 5647 and 5648, in an action by the personal representative. Again, the death might be caused by acts so willful, wanton, and reckless as to demand exemplary damages; such damages are provided for in section 5648 only, and cannot be recovered unless action is brought by a personal representative of the deceased under that section. See note to Bond v. United Railroads, Ann. Cas. 1912C, 67.

There was, therefore, ample reason for retaining the act of 1871, as amended, in the Revised Laws of 1912. It has an independent scope, and serves a purpose which cannot be accomplished under sections 4996 and 4997. I am of the opinion that an action can be maintained under those sections for the wrongful death of a minor child. It is unnecessary at this time to determine what the measure of damages would be, or whether in the present action there can be any recovery for injury to the estate of the decedent, or for the loss of his services to his parents during minority.

There is nothing in the complaint from which it may be reasonably inferred that the negligence alleged was so reckless, willful, or wanton as to entitle plaintiff to exemplary damages. I am aware that it is unnecessary, in the pleading, to claim such damages eo nomine; but in a case of this character, where the plaintiff chooses to base his action on section 5647 of the Revised Laws, rather than on section 4996, because the former permits punitive damages, there should be something in the complaint indicating that he is entitled to recover them. The rights granted under section 4996 are exclusive. It is unreasonable to suppose that the Legislature intended to give two remedies to the parent for the same injury.

The demurrer, therefore, will be sustained, in so far as it reaches the capacity of the plaintiff to maintain this action; oth-

erwise, it is overruled. Plaintiff will be allowed 20 days within which to take such action as he may be advised.