**SWENSEN et al. v. McDANIEL.**
**No. 976.**

United States District Court
D. Nevada.
Nov. 23, 1953.

George F. Wright, Elko, Nev., for plaintiff.

Orville R. Wilson, Elko, Nev., Griswold, Vargas & Bartlett, Reno, Nev., Rich & Strong, Salt Lake City, Utah, for defendant.

FOLEY, District Judge.

The complaint sets forth three causes of action all having to do with the same accident or transaction. The accident with which we are here concerned is the same as that which is made the basis of Case No. 974, Williams v. McDaniel, 119 F.Supp. 247, and Case No. 975, Roy L. Wilson and Lillian Norcutt, as the sole heirs at law of Oren Wilson, deceased, v. Helen V. McDaniel.

### Motion to Dismiss.

The first paragraph of defendant's motion to dismiss is upon the ground that the complaint does not state a claim upon which relief can be granted. In support of this ground, defendant urges (a) that the causes of action, if any, did not survive the death of J. B. McDaniel, the alleged wrongdoer; (b) the averments of the complaint are insufficient to place any liability upon defendant for the alleged tort of her husband, J. B. McDaniel.

Pertinent allegations of the first cause of action set forth in the complaint, each of which are incorporated in the second and third causes of action, are as follows:

Paragraph IV of the First Cause of Action:

"That on December 2, 1949, at about 3:15 p. m. Oren Wilson was driving a certain 1940 Plymouth sedan automobile in a westerly direction on said United States Highway 40 approximately sixteen miles east of the City of Elko, County of Elko, State of Nevada; that at said time and place one J. B. McDaniel, a resident of Wells, Nevada, so negligently

operated, drove, and controlled a certain 1946 Buick sedan automobile, Nevada license no. 38–364 in an easterly direction on said U. S. Highway 40 so as to proximately cause the said 1946 Buick sedan automobile to forcibly strike and collide with the said 1940 Plymouth sedan automobile operated by said Oren Wilson."

Paragraph V of the First Cause of Action:

"That at the time of the above accident and prior thereto the defendant, Helen V. McDaniel, and said J. B. McDaniel were associated together in business in the City of Wells, County of Elko, State of Nevada, and owned and operated various buildings as joint tenants with right of survivorship, and at the time of the above accident were jointly constructing a certain building known as an auto court in the City of Wells, County of Elko, State of Nevada; that at the time of said accident and prior thereto, said J. B. McDaniel was the manager of the joint venture of the business conducted and carried on by said J. B. McDaniel and defendant, Helen V. McDaniel, and said J. B. McDaniel at the time of said accident was the agent of the said joint venture consisting of said defendant and said J. B. McDaniel, and at the time of said accident was acting on behalf of said joint venture and within the scope and course of his agency."

Paragraph VI of the First Cause of Action:

"That the said J. B. McDaniel died on December 2, 1949, after the above accident."

In Bonfils v. Hayes, 70 Colo. 336, 201 P. 677, 678, the Supreme Court of Colorado in its opinion stated:

"Anna Hayes, defendant in error, brought suit against Bonfils, Tammen, and Litzenberger, and had a verdict and judgment for the death of her daughter by the negligence of their servant. They bring error.

"The defendants were stockholders and directors of a corporation and were actively engaged in its business of printing and publishing the Denver Post. After the expiration of its 20 years of existence according to the statute, which was November 4, 1915, they continued business under the corporate name, and while they were doing so, September 16, 1916, a boy, driving a delivery wagon about the said business, ran down plaintiff's daughter and killed her.

\* \* \* \* \* \*

"(5) Some argument is made that the defendants are not partners even if there was no corporation; but if they were actively co-operating in a business enterprise, and in connection therewith committed the tort in question, they are liable whatever the title of their combination—partners, co-adventurers, joint tort-feasors, or what. (Citing cases.)

"Their active co-operation in the business, there being no corporation, makes them responsible for its liabilities, and able to demand its dues. \* \* \*"

■ A definition of joint adventure is set forth by the Court in Parker v. Trefry, 58 Cal.App.2d 69, 136 P.2d 55, 58:

"(1–6) 'The courts have not laid down an exact definition of the term "joint adventure"; nor is it possible to enunciate a general rule by means of which the question as to what amounts to a joint adventure may be answered, inasmuch as the answer depends largely upon the terms of the particular agreement, upon the construction which the parties have given it, as indicated by the manner in which they have acted under it, and upon the nature of the undertaking, as well as upon other facts. \* \* \* It may be stated in general terms that the relation of joint adventurer is created when two or

more persons combine their money, property or time in the conduct of some particular line of trade, or for some particular business deal, agreeing to share jointly, or in proportion to the capital contributed, in the profits and losses, assuming that the circumstances do not establish a technical partnership. * * * To constitute a joint adventure, the parties must combine their property, money, efforts, skill or knowledge in some common undertaking. The contributions of the respective parties need not be equal or of the same character, but there must be some contribution by each coadventurer of something promotive of the enterprise. Although it has been contended that the property with which the parties to a joint adventure are to operate must be acquired after the relationship has come into existence, it seems clear that it is immaterial whether the property involved was individually owned before the joint venture was entered upon or was afterward acquired, so long as it was contributed and devoted to the uses and purposes of the enterprise. * * * a joint proprietary interest and right of mutual control over the subject matter of the enterprise or over the property engaged therein is essential to a joint adventure.' "

It may be in view of Estes v. Riggins, 68 Nev. 336, 232 P.2d 843, no cause of action survived against the estate of J. B. McDaniel, his legal representatives of his heirs as such, however, plaintiff's theory is that a cause of action exists against the defendant Helen V. McDaniel as a joint adventurer with J. B. McDaniel by virtue of negligence of J. B. McDaniel occurring while said J. B. McDaniel was acting within the scope and course of the joint adventure.

■ The complaint is not vulnerable to attack on either of the grounds contained in Paragraph (1) (a) or (1) (b) of the motion to dismiss.

In the motion to dismiss, defendant contends that the Court does not have jurisdiction over the first alleged cause of action for the reason:

"Paragraph IX of the complaint [first cause of action] shows that Dorothy Wilson was survived by her husband, Oren Wilson. He would be her sole beneficiary and heir under the statute of Nevada. Dorothy Wilson died December 2, 1949, and her husband, Oren Wilson, died December 3, 1949. It is apparent that his pecuniary loss for one day could not amount to $3,000."

Sec. 8554, Nevada Compiled Laws 1929, provides:

"When the death of a person not a minor is caused by the wrongful act or neglect of another, his heirs, or his personal representatives for the benefit of his heirs may maintain an action for damages against the person causing the death".

■ In Paragraph IX of the complaint, in the first cause of action, we find the statement that said Oren Wilson and Dot Swensen are the sole heirs at law of said Dorothy Wilson and this action is prosecuted on behalf of the heirs at law of said Dorothy Wilson. Nowhere in the first cause of action is the death of Oren Wilson suggested. However, if it should appear that Oren Wilson no longer survives, the action could be maintained by or on behalf of Dot Swensen, the mother of the deceased Dorothy Wilson.

Judge Farrington in Perry v. Tonopah Mining Co., D.C.Nev., 13 F.2d 865, 868, reminds us that the counterparts of §§ 8553 and 8554, Nevada Compiled Laws, were added to the Civil Practice Act and the Act of 1871 was amended. He states:

"This legislation, both original and amendatory, was incorporated in the Revised Laws of 1912, and became effective at the time the revision was put in force. * * * "

From Perry v. Tonopah Mining Co. and from Pardini v. City of Reno, 50 Nev. 392, 263 P. 768, quoting from the

Perry case; it appears that the Supreme Court was largely influenced in arriving at its conclusion by the fact that the complaint in the Pardini case alleged facts sufficient, if sustained, to entitle plaintiff to recover both exemplary and compensatory damages. At the time Pardini was decided, §§ 9194 and 9195, Nevada Compiled Laws, authorized a jury to give damages, pecuniary and exemplary. At that time neither §§ 8553 nor 8554 permitted recovery of exemplary damages, however, the Legislature of Nevada, by § 8554, Nevada Compiled Laws 1931–1941 Supp., Stats.1939, p. 17, amending § 8554, Nevada Compiled Laws 1929, authorized the recovery of exemplary damages. Some stronger reason exists for the applicability of §§ 9194 and 9195 to actions for wrongful death in addition to the reasons given in both the Perry and the Pardini cases.

In Perry v. Tonopah Mining Co., supra, Judge Farrington, after reviewing wrongful death statutes of several states, pointed out that:

"The Nevada statute does not profess to continue or revive an action which the injured person might have maintained if death had not ensued. That right of action is extinguished by death. What the statute does give is a new and independent right of action to the kindred who are injured by the death. It is a right of action which has no existence until the death of the injured party, and results therefrom. It makes no account of wrong done to the deceased; it is only concerned with the loss to the relatives. (Citing cases.)

"Our Practice Act confers a right of action on the parent for the death of a minor child; upon the guardian for the death of his ward, if of lawful age; upon the heirs or personal representatives for the death of a person not a minor. These provisions, however, do not cover the whole field of injuries which may result from wrongfully caused death. For instance, a boy of 20 years may at the same time be maintaining a wife, supporting his parents, and assisting his brothers and sisters. In such a case all would suffer pecuniary injury by reason of his death, but there could be no recovery by the widow, brothers, and sisters, except under sections 5647 and 5648 [§§ 9194 and 9195, Nevada Compiled Laws], in an action by the personal representative."

The two sets of enactments, §§ 8553 and 8554, 9194 and 9195, are pari materia, each having to do with one subject, losses occasioned by wrongful death.

In Nordyke v. Pastrell, 54 Nev. 98, 7 P.2d 598, 599, Justice Ducker, speaking for the Supreme Court of Nevada, stated:

"(1, 2) * * * We do not think the circumstances of these statutes are sufficient to sustain the contention of respondents that the repeal of section 8554 has been effected. There is no expression of such an intention in sections 9194 and 9195, and the circumstances are not strong enough to force the conclusion of repeal by implication. The late Judge Farrington, in considering these statutes in connection with the one permitting a parent to maintain an action for the wrongful death of a minor child in the case of Perry v. Tonopah Mining Co. (D.C. [Nev.]) 13 F.2d 865, reached the conclusion that our practice act confers a right of action upon the heirs or personal representatives for the death of a person not a minor. We do not think he reached a wrong conclusion in this regard. The right is expressly given in section 8554. While sections 9194 and 9195, the latter of which limits the right to a personal representative or representatives, covers the same subject-matter on account of which the heirs of a deceased person are permitted to maintain an action in section 8554, there is little beyond this to warrant the conclusion that they were intended as a substitute for the lat-

ter. The presumption is against repeals by implication. State [ex rel. Pyne] v. La Grave, 23 Nev. 25, 41 P. 1075, 1076, 62 Am.St.Rep. 764. In support of this rule recognized and applied in the foregoing case the court quoted as follows: ' "Repeals by implication are not favored," said Judge Field, speaking for the court, in Crosby v. Patch, 18 Cal. 438. "Such is the universal doctrine of the authorities. 'Whenever two acts,' says the supreme court of Pennsylvania, 'can be made to stand together, it is the duty of a judge to give both of them full effect. Even where they are seemingly repugnant they must, if possible, have such a construction that one may not be a repeal of the other, unless the latter one contain negative words, or the intention to repeal is made manifest by some intelligible form of expression.' (Citing cases.)

"More force would be given to respondents' contention if sections 9194 and 9195 constituted a later enactment than section 8554, but they were enacted in 1871, while section 8554 made its first appearance in our law in the Revised Laws of 1912. It is true that the statute of 1871 was amended at that time so as to include parents among the kindred entitled to the proceeds of any judgment for wrongful death and to give them preference over brothers and sisters when there were no surviving husband, wife, children, or grandchildren. This, however, could only serve to make the sections contemporaneous in enactment. If respondents' contention of repeal by implication were conceded, it would seem that the Legislature had enacted section 8554 merely for the purpose of repealing it in the same act by amending a law which had been in effect ever since 1871. It would be too curious to believe that such was the intention. Under the circumstances the presumption against repeal by implication be-

comes especially strong. In 25 R. C.L. p. 930, it is said: 'The presumption against implied repeals is especially strong where the provisions supposed to conflict were passed at nearly the same time.' * * *.

"(3) Stress is placed by respondents on the circumstances of the sections 9194 and 9195 having a later place in the Revision of 1912. They appear in said Revised Laws as sections 5647 and 5648. Emphasis is also given to the circumstance that these sections deal with the subject in a more minute and definite way. These considerations constitute legitimate indicii of intent; but standing alone are too slight to overcome the strong presumption against repeal in this case. * * * Sections 9194 and 9195 (Nevada Compiled Laws) are broad enough to include sections in behalf of minors. Perry v. Tonopah Mining Co., supra, D.C.Nev., 13 F.2d 865; Pardini v. City of Reno, 50 Nev. 392, 263 P. 768. Yet the court in the former case did not regard section 8553 of the Nevada Compiled Laws permitting parents to sue for the wrongful death of a minor, as having been repealed by the former sections. The Legislature of 1913 did not regard the latter section as having been repealed because it amended the section at that session. Stats.1913, p. 28, c. 35, § 2. When two statutes are so repugnant that both cannot be executed, it is the rule that the latest in position will control. But in this case the statutes may well subsist together and we are unwilling to say that this was not the intention."

Secs. 8553 and 8554, Nevada Compiled Laws, give such right of action to kindred who claim loss or injury by reason of the death of the deceased. Secs. 9194 and 9195, Nevada Compiled Laws, have the same purpose.

It is therefore the opinion of this Court that §§ 8553 and 8554 have existence together with §§ 9194 and

9195, Nevada Compiled Laws, and altogether they constitute a statutory authority giving rights of action for wrongful death and suggesting rules of practice in such cases—one statutory scheme. It follows that the plaintiff should not be required to make her complaint more definite and certain by stating specifically which of the statutes concerning actions for wrongful death she relies upon, and for the same reason, there is no merit in much of defendant's motion to strike.

From the foregoing, the Court holds that any of the classes of persons, including personal representatives mentioned in the two sets of statutes which are to be considered as if they constituted but one statute or law, may be party or parties plaintiff in an action for wrongful death; and any such action may be brought against any of the persons who, or the corporation which, would be liable to the party injured through such neglect or default if death had not ensued.

Other grounds of the motion to strike have been discussed in the opinion in Williams v. McDaniel, D.C., 119 F.Supp. 247, and further, we see from 3 Ohlinger's Fed.Prac. 218, 219:

"A motion to strike under Fed. Rules Civ.Proc. rule 12(f), 28 U.S. C.A., is not favored and should be granted only when the allegations complained of have no possible relation to the controversy. Matter will not be stricken unless it has no relation to the controversy in any way and its presence in the pleading will cause prejudice which cannot be prevented by action at a pre-trial conference or by a charge of the Court to the jury."

The Court recognizes the rule set forth in Wilderman v. Roth, D.C.E.D. Pa., 9 F.2d 637, where the Court stated:

"While the requisite amount set out in the ad damnum clause in a statement of claim, where the facts alleged are sufficient to support the claim of damages, prima facie gives the court jurisdiction, yet if, upon further proceedings, it appears as a legal certainty, as in this case, that the plaintiff could not have had any reasonable expectation that she could recover, exclusive of interest and costs, the jurisdictional amount, it becomes the duty of the court to dismiss the suit."

If, upon further proceedings, such a situation should appear here, the Court will notice lack of jurisdiction.

As a third ground to dismiss, the defendant contends that the Court does not have jurisdiction over the second alleged cause of action for the reason:

"Paragraph V of the complaint [second cause of action] states that James Tedrow was survived by his mother, Barbara Williams. The said mother, Barbara Williams, died December 2, 1949, the same being the date of the death of James Tedrow. It is apparent that the pecuniary damage, if any, suffered by Barbara Williams, would not amount to $3,000."

Nowhere in the second cause of action is the death of Barbara Williams suggested. However, if it should appear that Barbara Williams no longer survives, the action could be maintained by or on behalf of John Tedrow, twin brother of deceased James Tedrow.

As a fourth ground to dismiss, the defendant contends that the Court does not have jurisdiction over the third alleged cause of action for the reason:

"Paragraph V [third cause of action] states that Robert Chiles was eleven years of age at the time of his death on December 2, 1949. Barbara Williams was the mother of said Robert Chiles, and in the complaint filed by Williams v. McDaniel, in this court, it is stated that Barbara Williams, being then thirty-two years of age, died December 2, 1949 as the result of injuries received in this accident. * * * It is obvious that the pecuniary damage, if any, suffered by Barbara

Williams would not amount to $3,-000."

Nowhere in the third cause of action is the death of Barbara Williams suggested. However, if it should appear that Barbara Williams no longer survives, the action could be maintained by or on behalf of John Tedrow, brother of deceased Robert Chiles.

 It appears from the complaint here that the alleged ground of jurisdiction is diversity of citizenship. Residence and not citizenship is alleged. The words "residence" and "citizenship" are not synonymous. The allegations are defective and if it is a fact that diverse citizenship existed between the parties at the time this action was brought, plaintiff should be given an opportunity to amend her complaint by virtue of 28 U.S.C.A. § 1653.

"Diversity of citizenship as a basis for the jurisdiction of a cause in a District Court of the United States is not dependent upon the residence of any of the parties, but upon their citizenship. * * *

" 'Citizens' and 'residents' are not synonymous, since a resident of one state may be a citizen of any other state, and in some cases, as for example jurisdiction of Federal District Courts, the distinction is important." Jeffcott v. Donovan, 9 Cir., 135 F.2d 213, 214; Robertson v. Cease, 97 U.S. 646, 24 L.Ed. 1057; Wyman v. Wyman, D.C.Nev., 49 F. Supp. 952.

Now, Therefore, It Is Hereby Ordered:

That plaintiff, in her various capacities, be, and she hereby is, authorized to amend her complaint to show diverse citizenship of the parties, if she be so advised;

That unless the plaintiff avails herself of the right to make an amendment showing diversity of citizenship in the different causes of action within thirty days from the date of the filing of this Order, the Court will, upon the application of the defendant or upon its own motion, enter its Order dismissing this action, without prejudice, for want of jurisdiction;

That defendant's motion to dismiss be, and the same hereby is, denied upon all the grounds stated in said motion;

That defendant's motion to strike portions of complaint be, and the same hereby is, denied in its entirety;

That defendant's motion to make more definite and certain be, and the same hereby is, denied.