SPRINGFIELD COAL MINING CO. v. GORDON.

(Circuit Court of Appeals, Seventh Circuit.   August 11, 1906.)

No. 1,235.

MINES AND MINERALS—PROTECTION OF COAL MINE SHAFTS—ILLINOIS STATUTE.
    The provision of Act Ill. April 18, 1899 (Laws 1899, p. 303), re-
lating to coal mines, which requires that "the upper and lower landings
at the top of the shaft shall be securely fenced  *   *   *   so as to prevent
either men or materials from falling into the shaft," and gives a right of
action for any injury occasioned by a willful failure to comply with its
provisions, to which the defense of contributory negligence or assumption
of risk cannot be pleaded, is intended to guard against the accidental fall-
ing of men or materials into a shaft, and has no application to a case
where a man voluntarily thrust his head and shoulders through a fence
into a shaft, and was struck and killed by a cage.

In Error. to the Circuit Court of the United States for the South-
ern District of Illinois.

C. C. Conkling, for plaintiff in error.

James E. McDowling, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge.   The action in the Circuit Court was
to recover damages for the death of defendant in error's husband,
resulting from falling into a coal mine belonging to the plaintiff in
error; the verdict of the jury being for four thousand dollars, upon
which judgment was entered.

The coal mine in question was operated by means of a shaft having
three parallel compartments, which extended vertically down into
the earth to the depth of about two hundred and fifty feet.   One
of these compartments was used to carry the air current into the
mine.   The other two, the carrying compartments, were each about
ten feet in length, and seven feet in width, and were separated from
any other by heavy timbers; the two cages used for hoisting pur-
poses being raised and lowered through these compartments by means
of a cable and engine—one of the cages rising through one com-
partment of the shaft, while the other was lowering through the
other compartment, and vice versa.

Over these two compartments, at the mouth of the mine, was
erected a structure of heavy timbers, which formed a part of the
top works of the mine, and which was of the same relative dimen-
sions as the openings of the shaft; its use being to raise the hoisting
cages to a landing above the ground, or lower landing.   As a founda-
tion for these top works, there were heavy timbers called mud sills
placed around the two compartments of the shaft, about level with
the surface of the ground, and with their inside faces even with the
timbering around the inside of the shaft.

The accident occurred on the west side of the west compartment,
where the structure was as follows: At the corners of the mud sill
on the west side, were corner pieces of twelve by twelve inch timbers,
which ran up vertically above the ground, forming a part of the

top works. Running horizontally between these posts were timbers six by eight inches, called buntings, securely mortised and built into the posts, parallel with each other, and about eighteen inches apart. Running vertically from the bottom of the shaft to the shive wheel at the top of the top works, just inside these buntings, and fastened to them midway between the two corner posts, were guide rails constructed of timbers four by six inches, to which the cages were fitted, and up and down which the cages ran as they were being raised and lowered. There were also cross pieces sixteen feet in length of three by twelve inch timbers, running diagonally from each of the corner posts at the mud sill, to the other corner post. This construction was substantial and solid, of entire new timbers, and conforming to the construction usual to mines in that vicinity.

On the day of the accident the superintendent had instructed the men employed at the top of the mine to send some timbers down into the mine at the first opportunity. About two o'clock in the afternoon, all the coal which was available at the bottom of the mine having been hoisted, the top men, including Daniel Gordon, the deceased, were called down to the ground landing, to load timbers on the cages, and send them into the mine. The east cage was loaded with heavy timbers and sent down. The men at the bottom of the shaft, not having finished their part of the work when the men on the top had the other timbers ready to be sent down, Gordon, without any instruction from any one, went to the west side of the west compartment, constructed as described, to "joke" with the men below. Putting his head and shoulders between the buntings, just south of the guide rail, he began "jollying" the men who were taking the timbers out of the cage at the bottom, telling them to hurry up and the like; and it was while he was in this attitude, with his head thrust through the buntings, that the west cage in lowering caught him, crushing him between the cage and the buntings, and killing him instantly. There was no evidence that the engineer having control of the cages had any knowledge that Gordon's head was thrust through the buntings, or that Gordon in any way was in danger of the lowering cage.

The act of the General Assembly of the state of Illinois of April 18th, 1899 (Laws 1899, p. 303, § 2), provides "that the upper and lower landings at the top of the shaft shall be securely fenced with automatic or other gates, so as to prevent either men or materials from falling into the shaft"; and also (section 33, p. 324), "that for any injury to person or property occasioned by any willful violation of the act, or willful failure to comply with its provisions, a right of action shall accrue to the party injured, or to the widow or children"; and the Supreme Court of Illinois has held that in actions founded upon these statutes, the defense of contributory negligence and assumption of risk will not lie. Fulton v. Wilmington Star Mining Co., 133 Fed. 193, 66 C. C. A. 247, 68 L. R. A. 168. Willis Coal & Mining Co. v. Grizzell, 198 Ill. 313, 65 N. E. 74. It is upon these statutes, and this construction of them, that the defendant in error bases her right of recovery claiming such right of recovery even though

the accident was due to the fact of the deceased having needlessly put his head through an aperture in a fence that was entirely sufficient to prevent either men or materials from falling into the shaft.

Plainly the purpose of the statute was to prevent men or materials from falling into the shaft. The provision was intended to protect the men in the mine, as also the men working around the edge of the mine. And any fence sufficient to prevent either men or materials from falling into the shaft is a fence in compliance with the requirements of the statute.

The fence in question had apertures that would perhaps have permitted material of certain dimensions to fall into the shaft; and had such material fallen through those apertures, injuring some one in the mine, the case would be different from the one before us. Had Gordon himself fallen through one of these apertures the case might have been different. But in the case before us, no one in the mine was injured; no material went through the apertures; and no man fell into the mine. No case therefore is made out of a landing so insecurely fenced as to prevent either men or materials from falling into the shaft. On the contrary, the sole case made out is that of a fence, that though securely preventing men or materials from falling into the mine, was not so tightly constructed that a man might not thrust his head into the shaft.

The statute of Illinois for the protection of miners is justly strict and comprehensive. In the interest of humanity, it goes much beyond the requirements of the common law. But the limit that this statute has had set upon itself is the limit also to which the courts in its enforcement can go. The purpose of the section in question was to provide a barrier that would prevent men and materials from falling into the mine. That purpose was fully met by the fence provided by plaintiff in error. There is no command in the statute that the fence shall be made so tight that a man, consciously seeking to thrust his head into the shaft, may not be able to do so; and having done so that he may have a right of action for the consequences of his deed. And in the absence of such a purpose in the statute, the courts may not, by interpretation, supply it. In short, the case is not one that comes within any of the commands or prohibitions of the statute, nor within any of the liabilities created by the common law, and presents therefore an injury for which the law offers no remedy. The Circuit Court erred in overruling the plaintiff in error's motion, made at the close of all the evidence, to exclude the evidence; and also erred in refusing on the whole record to give to the jury an instruction to find the plaintiff in error not guilty; for which error the judgment of the Circuit Court is reversed, and the cause remanded with instructions to grant a new trial.