[No. 1825]

## SOPHIA ANDERSON, RESPONDENT, *v.* C. FEUTSCH AND J. GASSER, APPELLANTS.

1. MASTER AND SERVANT—INJURIES TO SERVANT—INDEPENDENT CONTRACTOR— DELEGATION OF WORK.

    An excavation in a sidewalk in a traveled thoroughfare is so inherently dangerous that the person making it cannot escape responsibility for injuries to others by having the work done by an indepenent contractor; he being bound to protect others from injury therefrom.

2. MUNICIPAL CORPORATIONS — EXCAVATION IN STREET — INJURIES — ACTION— SUFFICIENCY OF EVIDENCE.

    In an action for injuries sustained by falling into an excavation in a sidewalk in front of defendants' premises, evidence *held* to sustain a finding that the excavation was not safeguarded until after the accident.

3. APPEAL AND ERROR—REVIEW—EVIDENCE.

    The supreme court will only disturb a judgment for want of evidence where it is without any substantial evidence to support it.

4. APPEAL AND ERROR — PROVINCE OF TRIAL COURT — CREDIBILITY OF WITNESSES.

    The trial court is the exclusive judge of the credibility of witnesses.

### ON PETITION FOR REHEARING

1. MUNICIPAL CORPORATIONS — DEFECTIVE STREETS — EXCAVATIONS — FAILURE TO GUARD—STATUTES—CONSTRUCTION.

    Comp. Laws, 271, provides that any person or persons who shall make any excavation, or being the owners or in possession of any excavation, whether used for mining or for any other purpose, shall, during the time they may be employed in excavating; or after they may have ceased work on or abandoned the same, erect substantial safeguards, and keep the same in good repair, around such works or shafts, sufficient to securely guard against danger to persons or animals from falling into such excavation. *Held*, that such act was not limited to excavations for mining purposes, but required the guarding of excavations in streets, made for the benefit of abutting owners, rendering them liable for injuries to a traveler because of their failure to comply therewith.

APPEAL from the District Court of the Seventh Judicial District of the State of Nevada, Esmeralda County; *Theron Stevens*, Judge.

Action by Sophia Anderson against C. Feutsch and another. From a judgment for plaintiff and an order denying a motion for new trial, defendants appeal. **Affirmed.** Petition for rehearing. **Denied.**

The facts sufficiently appear in the opinion.

*Thompson, Morehouse & Thompson,* for Appellants:

I.   Section 271 of the Compiled Laws does not apply.   The title of that act is "An act to secure persons and animals from danger arising from mining and other excavations." It has no relation to streets or excavations in streets.   The words "other excavations" are *ejusdem generis*.   They mean simply excavations made in and about mines, excavations of the same class or kind.   The rule is "where there are general words following particular and specific words, the former must be confined to things of the same kind." (Suth. Stat. Const. 422, 423; *Edgecomb* v. *Creditors,* 19 Nev. 149.)

II.   Before plaintiff can recover, she must establish as a fact that her injury was the result from some act or omission of D. B. Gallagher, some act or omission which D. B. Gallagher as a prudent man could have, or should have, foreseen or contemplated, for the rule is: "The defendant is not liable in negligence where no injurious consequence could have reasonably been contemplated as a result of the act or omission complained of." (21 Am. & Eng. Ency. Law, 2d ed. 486.) She must show some act or omission, something which Gallagher should have done and which he did not do.   But she did not prove any act or omission of Gallagher or of these defendants.   Her testimony, that at 9:30 p. m. there was no barrier, raises no presumption as against positive evidence that it was fully protected at 6 p. m.   Her testimony simply establishes that a change had taken place.   The burden of proof is upon her to establish negligence, for the rule is: "Negligence is not presumed from the mere fact of injury, but must be established by the evidence."

*T. C. McDevitt,* for Respondent:

I.   Section 271 of the Compiled Laws, being "An act to secure persons and animals from danger arising from mining and other excavations," approved February 8, 1866, states that said excavation must be guarded.   Both of said sections provide a fine in case of the violation thereof, and neither of them is confined in its operations to incorporated cities or towns, as contended for by counsel.   This hole was dug by defendants, in direct violation of these statutes, and conse-

quently illegally and unlawfully, and a violation of a statute is negligence *per se.* (*Siemers* v. *Inas,* 54 Cal. 418; *Barry* v. *Terkildsen,* 72 Cal. 254; *Smith* v. *Simmons,* 103 Pa. St. 32; *Congreve* v. *Smith,* 18 N. Y. 79.)

II.   It appears that said contract calls for the doing of something that is inherently dangerous, to wit, to excavate the entrance to basement of warehouse on Miner Avenue, and it is well settled that if the work contracted for is of such a character that it is intrinsically dangerous, or will probably result in injury to a third person, one contracting to have it done is liable for such injuries, though the injury might be avoided if the contractor took proper precaution. (16 Am. & Eng. Ency. Law, 2d ed. 210; *Donovan* v. *Oakland Rapid Transit Co.,* 102 Cal. 245; *Hexamer* v. *Webb,* 101 N. Y. 377; *Barry* v. *Terkildsen,* 72 Cal. 254; *Congreve* v. *Smith,* 18 N. Y. 79; *Chicago* v. *Robinson,* 2 Black, 418; *Creed* v. *Hartman,* 29 N. Y. 591.)   Stipulation in the contract that contractor should use due care to prevent injury does not relieve him, since the employer is bound at his peril to see that such care is used. (16 Am. & Eng. Ency. Law, 2d ed. 202, notes; *Colgrove* v. *Smith,* 102 Cal. 220; *McCamus* v. *Citizens Gaslight Co.,* 40 Barb. 380.)

By the Court, NORCROSS, C. J.:

This is an action brought by the plaintiff, respondent herein, against the defendants, appellants herein, to recover damages in the sum of $10,000 for personal injuries sustained by the plaintiff on account of falling into an excavation alleged to have been made by the defendants in the sidewalk on the south side of Miner Avenue, in the town of Goldfield, and in front of the premises of defendants, which said excavation, it is alleged, the defendants had negligently failed to properly safeguard to prevent accidents to pedestrians passing along and upon said Miner Avenue.   The case was tried by the court without a jury, and a judgment for damages awarded in favor of plaintiff for the sum of $3,500.   From the judgment and from an order denying defendants' motion for a new trial, this appeal is taken.

That plaintiff fell into the excavation which was admittedly

dug for the benefit of defendants and appellants, and thereby sustained serious injuries, is not disputed, nor is it claimed upon this appeal that the damages are excessive, considering the injuries sustained, but it is contended that defendants are not legally responsible therefor. The defendants interposed two defenses: First—That the excavation was made by an independent contractor who contracted for a certain specific price to dig the excavation and to properly protect it so as to prevent accidents to those who might be traveling upon the street. Second—That defendants exercised due care in thoroughly safeguarding the excavation.

1. In support of the defense first mentioned defendants offered in evidence the following written instrument: "Goldfield, Nevada, May 4, 1907. The undersigned agree to excavate the entrance to basement of warehouse on Miner Avenue for Feutsch & Gasser, for the sum of Ten Dollars ($10.00), and to keep same covered for the protection of pedestrians until permanent doors are put in place. D. B. Gallagher. Witnesses: John M. McNulty. A. Carlin." Objection having been interposed to its admission, it was admitted subject to objection, and later, when the court came to decide the case, it was stricken out.

The court rendered a written opinion in the case from which we quote the following, with reference to this writing: "In fact, the paper itself and taken in connection with other facts introduced in evidence has a very strong tendency to discredit this paper as being a *bona fide* instrument—whatever it may be called. The evidence of the defendant Feutsch shows that Gallagher had the contract for the excavation of this basement, and it would seem rather peculiar under the circumstances that an independent writing should be drawn up with so much care, executed in the presence of two witnesses, for a $10 contract, and especially relieving the defendants for a violation of the statutes. Again, the only thing that the defendant Feutsch seemed to know about this instrument was that the signature of Gallagher was genuine. He did not see him sign the instrument. He did not know who wrote the instrument. He knew nothing whatever about it, except the fact that Gallagher's signature was genuine. No witnesses .

were called to prove the execution of this instrument—neither
Gallagher, nor McNulty, nor Carlin, whose signatures appear to
be attached as witnesses. In fact, I think the paper is entirely
discredited."

In any event, this is not such a case that the defend-
ants could be relieved of responsibility by showing that, if
negligence existed, it was the fault of an independent con-
tractor. An excavation of the character of the one in ques-
tion in this case dug in a well-traveled street or thoroughfare
is inherently dangerous to third persons traveling thereon, and
likely to lead to injury to them unless thoroughly safeguarded,
and it is incumbent upon the proprietor to foresee such mis-
chief, and to take precautions against it, and he cannot shift
the responsibility to an independent contractor so as to relieve
himself. (1 Thompson, Com. on Negligence, secs. 652, 653;
*Village of Jefferson* v. *Chapman*, 127 Ill. 438, 20 N. E. 33, 11
Am. St. Rep. 136; *Barry* v. *Terkildsen*, 72 Cal. 254, 13 Pac. 657,
1 Am. St. Rep. 55; *Colgrove* v. *Smith*, 102 Cal, 220, 36 Pac.
411, 27 L. R. A. 590; *Spence* v. *Schultz*, 103 Cal. 208, 37 Pac.
220; *Gaslight Co.* v. *Norwalk*, 63 Conn. 495, 28 Atl. 32; *Rail-
road Co.* v. *Morey*, 47 Ohio St. 207, 24 N. E. 269.) See, also,
Comp. Laws, 271. Thompson, *supra*, sec. 653, says: "This
principle has often been applied so as to charge a proprietor
with liability for damages to a traveler in consequence of one
who has contracted with the proprietor to do work on his
premises having made a dangerous excavation in the street,
and failed properly to guard the same for the protection of
the traveling public. These decisions generally proceed upon
the principle that where work to be done necessarily consti-
tuted an obstruction or defect in the street which renders it
dangerous to travelers, unless properly guarded or shut off
from public use, the principal for whom the work is done
cannot defeat a just claim for damages by proving that the
work which constituted the defect or obstruction was the work
of an independent contractor."

2. From the opinion of the trial judge we quote the fol-
lowing: "We now come to the next defense—that is, that the
excavation was thoroughly safeguarded by being entirely cov-
ered with three planks 2x12 inches wide and by a door which

entirely covered the excavation rendering it absolutely impossible for any one to fall into it. In addition to that, it is alleged, and there was evidence to prove, there were four barrels placed, one at each corner of the excavation, with planks laid on the top of the barrels, constituting a railing or fencing around the excavation. If this was done, then it certainly was a safeguard to protect pedestrians, as it would be impossible under the circumstances for any one to fall into the excavation without removing the planks or door. The evidence, however, fully establishes the fact that the plaintiff did fall into that excavation, and that by such fall she was injured. The testimony further shows that at the time she fell into the excavation there was no safeguard whatever around it, no barrels, no plank, nor anything in the nature of a covering or a fence or any obstruction whatever to prevent the plaintiff from falling. The evidence of the plaintiff and of her sister clearly establishes the fact that the plaintiff fell into the excavation. It establishes the fact without a contradiction that the sister went into the saloon and got the bartender to assist her in dragging the plaintiff out of this excavation. The evidence of Mrs. Osborn shows that it was very dark at the place where this excavation was sunk; that herself, her husband, and two others came out to hunt for the $5 which plaintiff claimed to have lost when she fell into the excavation; that her husband got down into the excavation; that there was loose dirt and rock in the bottom of the same, and that, when he stood up in the bottom, his head barely reached the top of the excavation; that he is about five feet, eight inches tall. Her evidence also corroborates the evidence of plaintiff and her sister that it was very dark, and that there was no light by which they could see this excavation, and that they had to light matches. She also testifies that there was no covering of any kind, no safeguards of any kind whatever around this excavation to prevent any one from walking right into it. As we have before shown by the statute (section 271 of the Compiled Laws), it was the duty of the defendants to see that the excavation was substantially safeguarded, sufficient to securely guard against danger to persons and animals from falling into the same. The defendants do not claim that they ever ordered any safe-

guards whatever to be placed around this excavation, or that they personally placed any safeguards, or that they knew any safeguards had been placed around it, except the defendant Feutsch testifies that he saw this place some time between 5 and 7 o'clock of the evening on which the accident occurred, and that these safeguards were around the place as has been testified to by the witness Nolting. But the credibility of this evidence is to be tested, first, by the interest of the defendant Feutsch in the result of this trial; second, by other facts and circumstances connected with the transaction and occurring immediately after the accident happened. It does not appear that during the night of the accident any of the defendants or any one connected with the defendants even suggested that this excavation had been safeguarded in any way. On the contrary, the defendant Feutsch at the house of the plaintiff in the presence of the plaintiff, her sister, and the witness Maggie Walters stated, as testified to by all three of the last-named persons, that he was sorry the plaintiff was hurt, he was sorry that the hole or excavation had not been covered, and for them to take good care of the plaintiff and that he would pay all expenses. This evidence is not contradicted by the defendant Feutsch in any manner whatever. In fact, it is corroborated by the evidence of Feutsch himself, who testifies that he proposed to pay the expenses and the doctor bills. At that time he had apparently no other idea than that the defendants were liable for the injuries which had been suffered by the plaintiff. Afterwards he seemed to have discovered that the defendants were not liable and then not only declined to pay any expenses whatever, but even regretted that he had given the plaintiff a bottle of whisky because he was in no way responsible for the injury. In view of all the evidence and the facts surrounding the case as testified to by the witnesses, I cannot escape the conviction that no safeguards whatever were placed around that excavation, and that it was left entirely unprotected. It is true that the witness Olson and the witness Nolting testified that they saw the excavation at about 6 o'clock on the evening of the accident, and that the same was safeguarded as heretofore described. In view of all the facts, however, I have grave doubts as to

the correctness of the testimony of the witnesses in that respect. They may have testified honestly as to having seen the excavation covered by planks and a door and protected by the barrels and planks, but, as to the date when they saw them, I think they must be mistaken, and I have no doubt but that the excavation was thoroughly guarded the next day after the accident, at which time extraordinary efforts were made to guard against further accident. They not only from the description of the safeguards completely covered the excavation so that persons could safely walk across the same, but in addition to that placed barrels all around it so that it could not be reached."

It is very strenuously urged upon this appeal that the finding of the trial court to the effect that the excavation was not safeguarded prior to the accident is contrary to the evidence. It is true that two witnesses other than the defendant Feutsch testified that on the evening of the accident and prior thereto they had observed the excavation, and that it was safeguarded, and that they were positive of the date because it was the evening of the circus. Defendant Feutsch testified to the same effect. Upon the other hand, there is positive testimony that there were no safeguards around the excavation at the time of the accident; that it was not protected "either by electric lights, candles, barrels, or lumber. Nothing at all, rough dirt thrown on the sides." The plaintiff, her sister, and another witness testified that upon the evening of the accident and shortly after it occurred the defendant Feutsch stated that "he was very sorry the place was not covered up," or "was sorry the hole wasn't covered." In his testimony he does not deny that he made such statements. It would be quite remarkable if the defendant knew that the excavation was protected in the manner claimed prior to the accident that he would not comment upon the removal of the safeguards, but, upon the contrary, the testimony stands uncontradicted that he expressed a regret that the hole was not covered.

Counsel for appellants' theory of the case appears to be that the excavation was safeguarded as claimed prior to the accident, but that in the meantime some unknown person or per-

sons, without the knowledge of defendants, had removed the barriers. Defendant Feutsch testified: "I know they had three planks and they used the same ones every night." He also says he saw the door and the four barrels, saw the hole for three or four weeks thereafter until the door was put in place. He did not go to look at the hole that night after the injury, and did not see it until the next day about noon. He testified: "I know that they covered it up when I came back."

From all of the evidence in the case we cannot say that the conclusion of the trial court that the excavation was not safeguarded until after the accident is contrary to the evidence. The trial court is the exclusive judge of the credibility of the witnesses, and, as this court has frequently decided, only in cases where a judgment is without substantial evidence to support it is this court authorized to disturb the judgment for want of evidence.

The judgment and order denying the motion for a new trial are affirmed.

## ON PETITION FOR REHEARING

By the Court, NORCROSS, C. J.:

It is urged, on petition for rehearing, that in the opinion heretofore rendered we did not pass upon appellants' contention that there was a failure upon the part of the plaintiff to show that any duty was imposed upon the defendants to guard the excavation, for the reason that it was not within a lawfully established street or public highway, and not within the portion thereof being used by the public as a thoroughfare. We did not deem it essential to determine whether Miner Avenue in the town of Goldfield was a "public highway," as that term is used in the statute, for the reason that we considered appellants' liability established independent of that question. It was a street or highway in fact being used by the public as such. We cited section 1 of an act entitled "An act to secure persons and animals from danger arising from mining and other excavations," approved February 8, 1866 (Comp. Laws, 271), which reads: "Any person or persons, company or corporation, who shall hereafter dig, sink, or excavate, or cause the same to be done, or being the owner or owners, or in the possession, under any lease or contract, of any shaft, excava-

tion, or hole, whether used for mining or otherwise, or whether dug, sunk, or excavated, for the purpose of mining, to obtain water, or for any other purpose, within this state, shall, during the time they may be employed in digging, sinking, or excavating, or after they may have ceased work upon or abandoned the same, erect, or caused to be erected, good and substantial fences or other safeguards, and keep the same in good repair, around such works or shafts, sufficient to securely guard against danger to persons and animals, from falling into such shafts or excavations."

The trial court held, and we think correctly so, that the appellants were bound, under the provisions of this statute, to keep the excavation in question protected. The earnestness and apparent sincerity with which counsel for appellants contended that the provisions of this act only apply to excavations for mining purposes may have entitled them to a more extended consideration of the point than that given in our former opinion. We have never been impressed, however, that the contention possessed any considerable force. We think it clear, both from the title and body of the act, that it was the intention of the legislature to protect persons and animals from all excavations, regardless of the purpose for which they were dug. Mining excavations were mentioned particularly, we think, only because they comprise the great majority of all excavations in this state. The great purpose of the act was to protect persons and animals from injury resulting from falling into unprotected excavations. The same injury would result from falling into a certain particular excavation, regardless of the purpose for which it was made. For the purpose designed to be accomplished by this act, all excavations are in a common class, and the fact that the legislature saw fit to specifically designate those made for mining purposes and to comprehend all others in general terms does not, we think, limit the provisions of the law to mining excavations only.

While this court has never before been called upon to construe this statute, its provisions were involved in the case of *Wiggins* v. *Henderson*, 22 Nev. 103. In that case two Wiggins brothers had been convicted and fined in the justice court for leaving a well unprotected. While the judgment in that case

was annulled on *certiorari* because the provisions of the act as to procedure had not been complied with, no one appeared to question that a well would be within its provisions.    The Wiggins case cannot, of course, be regarded as even indirectly determining the question here presented; but it is of some significance, possibly, that the position taken by counsel in this case did not suggest itself to any one connected with that case, where the proceeding was based primarily upon the statute.

A rehearing is denied.  ———