[No. 15680.  Department One.  March 3, 1920.]

ISABELLA DERNAC, *Respondent*, v. PACIFIC COAST COAL COMPANY, *Appellant*.[1]

MINES AND MINERALS—OPEN SHAFTS—LIABILITY—STATUTES—CONSTRUCTION.  The owner of a mine is not liable for the death of a boy who entered a mine slope through the unfastened door in search of a ball and was killed by black damp several hundred feet from the entrance, under Rem. Code, § 7408, p. 121, which provides that owners of any "shaft, excavation or hole," shall keep the same sufficiently safeguarded against danger to persons or animals from "falling into" the same.

STATUTES (76)—CONSTRUCTION—STRICT CONSTRUCTION.  A statute creating a right where none existed before will be strictly construed as to the persons entitled to the benefit of it.

Appeal from a judgment of the superior court for King county, Hall, J., entered October 11, 1919, upon the verdict of a jury rendered in favor of the plaintiff, in an action for the death of a minor child, after a trial on the merits.  Reversed.

*Farrell, Kane & Stratton,* for appellant.

*Tucker & Hyland,* for respondent.

[1]Reported in 188 Pac. 15.

MACKINTOSH, J.—The appellant was the owner of a mine slope located in the town of Black Diamond, King county. The slope had a pitch of about twenty degrees, and came to the surface on an open and vacated tract which was a favorite place for the children of the neighborhood to play upon. The outlet was protected by a house of timber, covered on the sides and top and with a heavy wire screen or mesh drawn across the face of the slope to enable the free passage of air into the slope. A small door in the screen permitted of entrance. This door had been left unlocked and unfastened for some time before the incident giving rise to this lawsuit. Joe Dernac, a boy then of the age of fourteen years and nine months, was, with his playmates, kicking a football near the entrance. The ball having rolled into the slope, Durnac and some of his companions entered for the purpose of recovering it. Dernac was in the lead and when those following him had reached the inner door, nearly two hundred feet from the entrance, they missed him, and after procuring assistance they found his body at a point three hundred and thirty-six feet from the entrance, where he had been overcome by "black damp." This action was begun by his mother to recover damages for his death. Judgment having been returned in her favor, the mining company appeals.

Upon the trial of the case the respondent requested but one instruction, based upon Rem. Code, § 7408, found on page 121, Laws of 1890, and which reads:

"You are instructed that it is the law of this state that any person or persons, company or corporation, who shall dig, sink, excavate or cause the same to be done; or, being the owner or owners or being in possession or under lease or contract to dig any shaft, excavation or hole to be used for mining or otherwise, while digging, sinking or excavating, or after ceasing work

upon or abandoning the same, shall erect or cause to be erected, good and substantial fences or other safeguards and keep the same in good repair around said works or shafts sufficiently to securely safeguard against danger to persons or animals from falling into said shaft or excavation."

Counsel for respondent frankly state that they base their entire right of recovery upon this statute, saying in their brief, "It is true that counsel for plaintiff told the jury and the court that he would rest plaintiff's case on the statute." It is the contention of the appellant that the statute has no application to the facts as they exist. The issue is thus a simple one, and calls only for an examination and interpretation of the statute.

In making such interpretation, it is proper to have in mind the evils which the passage of the statute were intended to remedy. Unguarded excavations on private property were a source of danger, and unless some warning of their existence or safeguards were afforded they were constant menaces to the lives and limbs of persons using the property and unaware of their existence. This is especially true in mining districts, and on this account the statute was passed in this state, and similar statutes have been passed in other states where mining operations are carried on. In view of the language of this statute and the dangerous results which were sought to be prevented, it cannot be said that the statute means, when it says that the guards are for the purpose of preventing the "falling" of persons into excavations, that thereby tunnels and slopes should have been so guarded that no one could walk into them. It might have been that the legislature could have made it obligatory upon mining companies to guard against accidents from other sources as well as "falling." The deceased hav-

ing voluntarily walked into the passageway, cannot be said to have "fallen" into it; nor was the passageway of such character as to make it possible for him to "fall" into it. The purpose of the law was to prevent an involuntary entrance into a "shaft, excavation or hole."

In *Springfield Coal Min. Co. v. Gordon,* 147 Fed. 690, the court had under consideration the Illinois statute which provided that a shaft be "securely fenced . . . so as to prevent either men or materials from falling into the shaft." A miner who stuck his head through the fence was killed by a descending cage, and the court, passing upon the statute, said:

"Plainly the purpose of the statute was to prevent men or materials from falling into the shaft. The provision was intended to protect the men in the mine, as also the men working around the edge of the mine. And any fence sufficient to prevent either men or materials from falling into the shaft is a fence in compliance with the requirements of the statute.

"The fence in question had apertures that would perhaps have permitted material of certain dimensions to fall into the shaft; and had such material fallen through those apertures, injuring some one in the mine, the case would be different from the one before us. Had Gordon himself fallen through one of these apertures the case might have been different. But in the case before us, no one in the mine was injured; no material went through the aperture, and no man fell into the mine. No case is therefore made out of a landing so insecurely fenced as to prevent either men or materials from falling into the shaft. On the contrary, the sole case made out is that of a fence, that though securely preventing men or materials from falling into the mine, was not so tightly constructed that a man might not thrust his head into the shaft."

In giving force to the words "shaft, excavation or hole" and "falling into," we must bear in mind their natural, ordinary, and popular meanings in the ab-

sence of any showing that they have other or different meanings in mining parlance, which certainly do not include the situation presented in this case. *Hemmingson v. Carbon Hill Coal Co.*, 62 Wash. 28, 112 Pac. 1111. In order to hold the statute applicable to the conditions presented by this record, that portion of it which reads "falling into shafts or excavations" would have to be entirely eliminated. This cannot be done, for the legislature must be held to have meant something by this language. "It is our duty, within the bounds of reason, to give it some meaning rather than none." *Northern Pac. R. Co. v. Snohomish County*, 101 Wash. 686, 172 Pac. 878; *Whittlesey v. Seattle*, 94 Wash. 645, 163 Pac. 193, L. R. A. 1917D 1084.

Furthermore, this statute creates a right where none existed at common law, and will be strictly construed when determining the persons who are entitled to benefit thereby. The company in this case had furnished safeguards and its only liability would have been by reason of the fact that the door had been left open. As we view the act relied on, the company was not under the legal necessity of safeguarding such a situation; and in any event, it was not responsible for the injury which was occasioned by the voluntary act of the boy who entered through an open door and proceeded a considerable distance until he was overcome by the poisonous atmosphere of the slope. The respondent was not entitled to recover, and judgment should have been rendered for the appellant.

Judgment reversed.

HOLCOMB, C. J., MAIN, MITCHELL, and PARKER, JJ., concur.