JAMES D. ROSS AND SHARON L. ROSS, APPELLANTS, *v.* CARSON CONSTRUCTION, GENERAL CONCRETE, RESPONDENTS.

No. 20886

December 20, 1990                    803 P.2d 657

*Piazza & Associates* and *Robert M. Ebinger,* Las Vegas; *Katten, Muchin & Zavis,* Chicago, Illinois, for Appellants.

*Lyles, Austin & Burnett* and *Scott R. Schreiber,* Las Vegas, for Respondent General Concrete.

*Alverson, Taylor, Mortensen & Gould* and *Gary C. Milne,* Las Vegas, for Respondent Carson Construction.

## OPINION

*Per Curiam:*

In April 1987 appellant James Ross was working as a sheet metal worker on a construction site. Ross was informed by his supervisor that he would be temporarily laid off. The next day Ross went to the Nellis Crossing shopping center site in search of work. Ross first drove to the foreman's trailer at the entrance to the property. After discovering that no one was at the trailer, Ross observed men at work toward the rear of the site. While driving toward the workers, Ross drove his vehicle into a six foot wide, three foot deep, trench. As a result, Ross alleges that he suffered serious injuries including a broken neck.

Respondent Carson Construction was the general contractor on the Nellis Crossing site. Respondent General Concrete, a subcontractor, was working under Carson Construction. Ross and his wife filed suit against Carson Construction and General Concrete, alleging negligence in their failure to safeguard and barricade the excavation. Respondents' answers alleged various affirmative defenses. Respondents also filed a Motion for Summary Judgment pursuant to NRCP 56. The motion maintained that no breach of duty occurred in the absence of willful or wanton conduct because Ross was a "trespasser" when he entered the construction site. Appellants countered by asserting that Mr. Ross was an invitee on the construction site and that

genuine issues of material fact existed as to his status and the duty of care owed him.

The district court granted the motion for summary judgment on November 7, 1989. The Rosses filed a motion for reconsideration on December 16, 1989, asserting that the duty imposed by NRS 455.010[1] to safeguard open excavations superseded the common law duty. An order denying this motion was issued on December 18, 1989, the court ruling that NRS 455.010 was inapplicable to temporary excavations.

Appellants assert that the district court erred in holding that NRS 455.010 applies only to permanent excavations. Although this issue was raised in response to the district court's December 18, 1989 order denying the Rosses' motion for reconsideration and need not be considered on appeal, we elect to reach the merits of this contention. In its order denying the motion for reconsideration, the district court stated, "NRS 455.010 applies only to excavations which are permanent in nature; not the temporary diggings found on construction sites. Were it otherwise, the construction industry would be building more fences than buildings." Our interpretation of the statute indicates that it applies equally to all excavations regardless of their permanency. We believe that the district court was incorrect in stating that an interpretation other than its own would require the fencing of every temporary construction excavation. The statute reads "fence or other safeguard." In this very case, an "other safeguard" was employed by the respondents at one time: the fifty-five gallon drum barricades. The Rosses contend that the removal of these safeguards shortly before Mr. Ross entered the property proximately contributed to his injuries.

The Rosses cite Dixon v. Simpson, 74 Nev. 358, 332 P.2d 656 (1958), and Anderson v. Feutsch, 31 Nev. 501, 103 P. 1013

---

[1]NRS 455.010 provides:

Erection of fence or other safeguard around excavation, hole or shaft required. Any person or persons, company or corporation, who shall dig, sink or excavate, or cause the same to be done, or being the owner or owners, or in the possession under any lease or contract, of any shaft, excavation or hole, whether used for mining or otherwise, or whether dug, sunk or excavated for the purpose of mining, to obtain water, or for any other purpose, within this state, shall, during the time they may be employed in digging, sinking or excavating, or after they may have ceased work upon or abandoned the same, erect, or cause to be erected, good and substantial fences or other safeguards, and keep the same in good repair, around such works or shafts, sufficient to guard securely against danger to persons and animals from falling into such shafts or excavations.

(1909), in support of their argument that NRS 455.010 applies equally to permanent and temporary excavations. In both of these decisions, the statutory standard found in NRS 455.010 was applied to hold the property owner liable for injuries sustained when the plaintiff fell into an open excavation. In both cases, the excavations were dug for construction purposes and were, presumably, temporary in nature. The *Dixon* case involved an excavation dug for sewer line purposes, as was the hole into which Mr. Ross drove his vehicle. 74 Nev. at 359, 332 P.2d at 657. In light of this authority we cannot agree with the district court's interpretation of NRS 455.010.

Respondents argue that the *Dixon* and *Anderson* decisions are distinguishable from the present controversy because both involved excavations that bordered public roadways.[2] They assert that the hole into which Ross fell was wholly situated on private property, not accessible to public traffic, and therefore not subject to NRS 455.010. This argument is unpersuasive. From its wording, it appears that the primary intent of the statute was the prevention of injuries suffered from falling into unprotected mine shafts. *See* Orr Ditch & Water Co. v. Justice Court, 64 Nev. 138, 144-45, 178 P.2d 558, 561-62 (1947). Assuming that mines are often wholly situated on private property, respondents' private/public distinction in applying the statutory standard of care fails. It should also be noted that Washington statute (RCW) 78.12.010, which is identical to NRS 455.010, was specifically applied to "[U]nguarded excavations on private property" in Dernac v. Pacific Coast Coal Co., 188 P. 15, 16 (Wash. 1920). We hold that the trial court was incorrect in determining that NRS 455.010 was inapplicable because the excavation was temporary or situated on private property.

The Rosses also contend that NRS 455.010 creates a duty to safeguard excavations, and a corresponding right to recovery for breach of this duty, regardless of the injured party's status as a trespasser, licensee or invitee under the common law. They cite Dixon v. Simpson for the proposition that statutory liability under NRS 455.010 exists side-by-side with common law landowner liability. Appellants also point out that in *Dixon* this court stated "we are concerned with statutory as well as common law liability." 74 Nev. at 360, 332 P.2d at 657. Perry v. Tonopah Mining

---

[2]The excavation at issue in *Dixon* was cut across an alleyway. The opinion does not indicate whether the alley was open to public access or was wholly situated on private property. 74 Nev. at 359, 332 P.2d at 657. The excavation in *Anderson* was partially in the path of a public sidewalk. 31 Nev. at 503, 103 P. at 1014.

Co., 13 F.2d 865 (D.Nev. 1915), supports appellants' contention that liability may be imposed under NRS 455.010 regardless of the injured party's common law status. In that decision, the court held that "[t]he protection intended by the act was for the public generally," and that the statute imposed an "absolute duty, non-performance of which, resulting in injury, is negligence as a matter of law, for which, in the absence of contributory negligence, a recovery may be had." 13 F.2d at 866. Based upon these conclusions, the *Perry* court found a duty to the plaintiff despite his common law trespasser status.

Respondents attempt to distinguish *Perry* on the basis of the type of excavation at issue. In *Perry* the plaintiff was killed after falling into an abandoned mine stope. Carson Construction suggests that this abandoned excavation was different from the excavation on the Nellis Crossing site where work was ongoing at the time of Mr. Ross' accident. Carson maintains that the existence of ongoing construction work provided Mr. Ross with necessary warning. This distinction conflicts with the language of the statute. By its terms, NRS 455.010 applies to both situations: "during the time they may be employed in digging, sinking or excavating, or after they may have ceased work upon or abandoned the same . . . ."

The identical Washington statute—RCW 78.12.010, was held to create "a duty and a corresponding right where none existed at common law" in McDermott v. Kaczmarek, 469 P.2d 191, 194 (1970). *See also Dernac,* 188 P. at 17. Respondents attempt to distinguish *McDermott, Dernac* and *Perry* on the grounds that the victims in all three cases were children and that Mr. Ross was an adult construction worker familiar with the existence of excavations on construction sites. There is no language in any of these decisions, or in NRS 455.010 or RCW 78.12.010, limiting application of the statutory standard of care to minors.

We conclude that the district court erred in granting summary judgment. NRS 455.010 imposes an absolute duty to safeguard open excavations regardless of their permanency. In light of this holding, we elect not to reach the issue of Mr. Ross' status under the common law landowner liability classifications. Respondents' defenses raise questions of material fact whether they should be excused from the duties imposed by NRS 455.010. Accordingly, we hereby reverse the grant of summary judgment and remand this matter to the district court.