DAVID MOODY, Appellant, v. MANNY'S AUTO REPAIR AND SHIMON PERESS, Individually and SHIMON PERESS d/b/a MEADOWS MFG. JEWELERS, INC., a Nevada Corporation, Respondents.

No. 22938

March 30, 1994          871 P.2d 935

*Albert D. Massi* and *Patricia L. Bowling,* Las Vegas, for Appellant.

*Thorndal, Backus, Maupin & Armstrong* and *Robert Groesbeck,* Las Vegas, for Respondent Manny's Auto Repair.

*Rawlings, Olson & Cannon* and *Peter Angul,* Las Vegas, for Respondent Peress.

## OPINION

By the Court, Rose, C. J.:

On the night of April 2, 1988, while riding his motorcycle, appellant David Moody (Moody), an on-duty police officer, turned into the entrance of a parking lot leased by respondent Manny's Auto Repair (Manny's) and owned by respondent Shimon Peress (Peress) and collided with a steel cable strung across the entrance to the parking lot. Moody filed a complaint against Manny's and Peress for injuries sustained in the collision. Peress moved for summary judgment, and after Manny's joined in the motion, the district court granted summary judgment in favor of Manny's and Peress and against Moody. We conclude that the district court erred in granting summary judgment as: (1) neither the firefighter's rule nor NRS 41.139 preclude Moody's suit for personal injuries because the event which caused Moody to be on Manny's and Peress's premises was not the event which injured Moody, and (2) there remains a genuine issue of material fact as to whether Manny's and Peress acted reasonably under the circumstances in erecting the steel cable or permitting it to be erected.

### FACTS

On April 2, 1988, at approximately 10:40 p.m., Moody, an on-duty Las Vegas Metropolitan Police Officer, observed a vehicle proceed through a red traffic signal. To avoid traffic in front of him and promptly give chase, Moody turned his motorcycle into the entrance of a parking lot leased by Manny's and owned by

Peress. Moody collided with a steel cable strung across the entrance to the parking lot. Moody alleges that the cable was unlit and unmarked.

On January 25, 1990, Moody filed a complaint seeking recovery for personal injuries sustained in the collision, and on April 26, 1990, Moody filed a first amended complaint substituting Peress for a Doe defendant. On July 20, 1990, Peress filed a motion to dismiss, arguing that his substitution as a Doe defendant was barred by the applicable statute of limitations. On December 21, 1990, the district court granted Peress's motion to dismiss.

On January 28, 1991, Manny's filed a third-party complaint against Peress. On August 21, 1991, Peress filed a motion for summary judgment, which Manny's later joined. Manny's and Peress argued that NRS 41.139(1) precluded any recovery by Moody for his injuries, and that, since Moody was a trespasser, no duty of care was owed to him; therefore, as a matter of law, they could not be liable. On October 8, 1991, the district court granted the summary judgment motion in favor of Manny's and Peress. Moody appeals the order granting summary judgment entered October 8, 1991.

## DISCUSSION

*Standard of review*

Summary judgment is appropriate only when no genuine issue of material fact remains for trial and the moving party is entitled to judgment as a matter of law. Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985). Accordingly, a district court may not grant summary judgment if a reasonable jury could return a verdict for the nonmoving party. Oehler v. Humana, Inc., 105 Nev. 348, 350, 775 P.2d 1271, 1272 (1987). On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom summary judgment is sought. Oak Grove Inc. v. Bell & Gosset Co., 99 Nev. 616, 623, 668 P.2d 1075, 1079 (1983). While the factual allegations of the nonmoving party must be accepted as true, the nonmoving party must also allege specific facts demonstrating there is a genuine material issue for trial. Grayson v. Jones, 101 Nev. 749, 751, 710 P.2d 76, 77 (1985).

*The firefighter's rule*

In Steelman v. Lind, 97 Nev. 425, 428, 634 P.2d 666, 667-68 (1981), we first adopted the "fireman's rule," which states that a

firefighter or peace officer cannot complain of negligence where the negligently created risk which results in the public servant's injury is the reason for his or her being at the scene where the injury occurs. We stated in *Steelman:*

> A public safety officer . . . cannot base a tort claim upon damage caused by the very risk that he is paid to encounter and with which he is trained to cope.
>
> Such officers, in accepting the salary and fringe benefits offered for the job, assume all normal risks inherent in the employment as a matter of law and thus may not recover from one who negligently creates such a risk.

*Id.* at 427-28, 634 P.2d at 667 (citations omitted). We further stated:

> Whether the negligently created risk which results in a fireman's or policeman's injury is the reason for his being at the scene in his professional capacity determines the applicability of the rule.

*Id.* at 428, 634 P.2d at 668; *accord* Pottebaum v. Hinds, 347 N.W.2d 642, 646 (Iowa 1984); Sutton v. Shufelberger, 643 P.2d 920, 926 (Wash.Ct.App. 1982); *see also* 3 J.D. Lee & Barry A. Lindahl, Modern Tort Law § 39:12 (rev.ed. 1988) (the fireman's rule "applies to deny recovery to a firefighter or police officer 'whenever their injuries are caused by the very wrong that initially required the presence of an officer in his official capacity and subjected him to harm. . . .' The rule . . . does not apply to a third party whose intervening negligence or intentional conduct causes injury to the official while the officer is performing official duty. Thus, where a police officer stops a vehicle and is in the process of dismounting a motorcycle when struck by a third person, the rule does not apply").

Manny's and Peress assert that the firefighter's rule was codified by NRS 41.139, that NRS 41.139 was meant to set forth the firefighter's rule in its entirety, replacing that rule as set forth in case law, and that NRS 41.139 precludes Moody's recovery in the instant case. Moody contends that summary judgment should not have been granted because NRS 41.139 does not preclude his cause of action. NRS 41.139(1) states, in pertinent part:

> [A] peace officer, fireman or emergency medical attendant may bring and maintain an action for damages for personal injury caused by the willful act of another, or by another's lack of ordinary care or skill in the management of his property, if the conduct causing the injury:
>
> (a) Occurred after the person who caused the injury knew or should have known of the presence of the peace officer, fireman or emergency medical attendant;

 (b) Was intended to injure the peace officer, fireman or emergency medical attendant;

 (c) Violated a statute, ordinance or regulation:

  (1) Intended to protect the peace officer, fireman or emergency medical attendant; or

  (2) Prohibiting resistance to or requiring compliance with an order of a peace officer or firefighter; or

 (d) Was arson.

We conclude that NRS 41.139 was intended only to limit the firefighter's rule as set forth in *Steelman,* and was not intended as a statement of the rule in its entirety.

 The construction of a statute is a question of law. Nyberg v. Nev. Indus. Comm'n, 100 Nev. 322, 324, 683 P.2d 3, 4 (1984). In Welfare Div. v. Washoe Co. Welfare Dep't, 88 Nev. 635, 503 P.2d 457 (1972), we stated:

> The leading rule for the construction of statutes is to ascertain the intention of the legislature in enacting the statute, and the intent, when ascertained will prevail over the literal sense. The meaning of words used in a statute may be sought by examining the context and by considering the reason or spirit of the law or the causes which induced the legislature to enact it. The entire subject matter and the policy of the law may also be involved to aid in its interpretation, and it should always be construed so as to avoid absurd results.

*Id.* at 637-38, 503 P.2d at 458-59 (citations omitted). An examination of the legislative history of NRS 41.139 leads us to the inescapable conclusion that the statute was intended as a limitation on the firefighter's rule and not as a codification of the rule.

 The legislative hearings on Assembly Bill 80 (A.B. 80), enacted as NRS 41.139, indicate that the Legislature specifically contemplated that the rule would continue as set forth in *Steelman. See* Hearings on A.B. 80 Before the Nevada Senate Judiciary Committee, 63rd Session (March 26, 1985); Hearings on A.B. 80 Before the Nevada Assembly Judiciary Committee, 63rd Session (February 12, 1985). The legislative history of NRS 41.139(1) suggests that the statute was not meant to preclude recovery for the type of injury which occurred in the instant case. Rather than expanding the firefighter's rule to preclude recovery from those occasions where the injury was not related to the public servant's purpose for being present, NRS 41.139(1) was intended to narrow the firefighter's rule to permit recovery in instances where recovery was previously precluded. *Id.* Although not explicitly stated in NRS 41.139(1), the legislative history of

the statute clearly indicates the Legislature only intended the statute to apply where the injury was caused by the event giving rise to the public servant's presence. *See* Hearings on A.B. 80 Before the Nevada Assembly Judiciary Committee, 63rd Session (February 12, 1985).

A.B. 80 is based on California Civil Code section 1714.9,[1] adopted in 1982, which created exceptions to the bar of the firefighter's rule. *Id.* California Civil Code section 1714.9, like NRS 41.139, was not intended to broaden the firefighter's rule, but was intended to narrow it by providing additional exceptions to the rule. 6 B.E. Witkin, Summary of California Law, Torts § 746 (9th ed. 1988); *see* Terhell v. American Commonwealth Associates, 218 Cal.Rptr. 256, 260 (Cal.Ct.App. 1985) (California Civil Code section 1714.9 "very strictly limits application of the [firefighter's] rule."). In Comment, *The Fireman's Rule: Defining Its Scope Using the Cost-Spreading Rationale,* 71 Cal.L.Rev. 218 (1983), a copy of which is attached as exhibit E to the Minutes of the Nevada State Legislature, Hearings of the Assembly Judiciary Committee, February 12, 1985, the commentator states:

> The fireman's rule bars tort claims by firefighters and police officers against persons whose negligence or recklessness causes the fire or other hazard that injures the officer. . . . [T]he rule only bars actions for injuries caused by the misconduct that prompted the officer's presence at the scene. An injury that occurs independently of the misconduct to

---

[1]California Civil Code section 1714.9(a) provides, in pertinent part:

(a) Notwithstanding statutory or decisional law to the contrary, any person is responsible not only for the results of that person's willful acts causing injury to a peace officer, firefighter, or any emergency medical personnel employed by a public entity, but also for any injury occasioned to that person by the want of ordinary care or skill in the management of the person's property or person, in any of the following situations:

(1) Where the conduct causing the injury occurs after the person knows or should have known of the presence of the peace officer, firefighter, or emergency medical personnel.

(2) Where the conduct causing the injury occurs after the person knows or should have known of the presence of the peace officer, firefighter, or emergency medical personnel violates a statute, ordinance, or regulation, and was the proximate cause of an injury which the statute, ordinance, or regulation was designed to prevent, and the statute, ordinance, or regulation was designed to protect the peace officer, firefighter, or emergency medical personnel.

. . . .

(3) Where the conduct causing the injury was intended to injure the peace officer, firefighter, or emergency medical personnel.

(4) Where the conduct causing the injury is arson . . . .

which the officer responds is outside the scope of the rule and the officer will be able to proceed in tort.

California Supreme Court . . . decisions have reinforced the idea that injuries caused by independent acts of misconduct fall outside the rule . . . .

*Id.* at 218 (footnotes omitted). "Ever since *Walters,* California courts have stated that the fireman's rule only shields the defendant from liability for acts that furnish the occasion for the officer's presence." *Id.* at 227.

The California court's interpretations of the nearly identical provisions of Civil Code section 1714.9 may serve as a guide to this court in interpreting NRS 41.139. Further, this court must presume that the Nevada Legislature, in adopting NRS 41.139 and patterning it after California Civil Code section 1714.9, intended NRS 41.139 to have the construction given to Civil Code section 1714.9 by the California courts at the time NRS 41.139 was enacted. *See* Astorga v. Ishimatsu, 77 Nev. 30, 32, 359 P.2d 83, 84 (1961). At the time NRS 41.139 was enacted, the California courts had clearly interpreted Civil Code section 1714.9 to supplement and narrow the common law firefighter's rule, not to replace it. This interpretation must be presumed, absent evidence to the contrary, to have been carried over in the adoption of NRS 41.139.

Since the enactment of California Civil Code section 1714.9, the nonstatutory components of the firefighter's rule have continued to be followed. In particular, even after the enactment of section 1714.9, the California Courts of Appeal have found the firefighter's rule to be inapplicable where the act that injures the public servant is independent of the conduct for which the public servant's presence was required at the accident scene. Gibb v. Stetson, 245 Cal.Rptr. 283, 285-86 (Cal.Ct.App. 1988); Rowland v. Shell Oil Co., 224 Cal.Rptr. 547, 549 (Cal.Ct.App. 1986); City of Redlands v. Sorensen, 221 Cal.Rptr. 728, 730, 733 (Cal.Ct.App. 1985); Terhell v. American Commonwealth Associates, 218 Cal.Rptr. 256, 258-59 (Cal.Ct.App. 1985); Rose v. City of Los Angeles, 206 Cal.Rptr. 49, 52 (Cal.Ct.App. 1984).

Like California Civil Code section 1714.9, NRS 41.139(1) was intended to simply supplement the common law firefighter's rule, rather than replace the common law with statutory law. We conclude that NRS 41.139 was intended and understood by the

Legislature to be a statutory attempt to narrow the firefighter's rule to allow recovery by public servants where recovery was not previously allowed; NRS 41.139 was not intended to further restrict the ability of public servants to recover for injuries sustained in the course of their employment. *See* Hearings on A.B. 80 Before the Assembly Judiciary Committee, 63rd Session (February 12, 1985) (A.B. 80 was supported by Nevada Trial Lawyers Association, Federated Firefighters of Nevada, Police Association of Nevada, and seen as "additional protection to the firemen"). The firefighter's rule, as set forth in Steelman v. Lind, 97 Nev. 425, 634 P.2d 666 (1981), and as modified by NRS 41.139, is still operative in Nevada, and its scope is limited to those instances when the negligent act which injures the public servant is the same act which required the public servant's presence. We hold that in the instant case, the acts of Manny's and Peress in erecting the cable barrier were unrelated to the traffic violation which set Moody in motion, and therefore Moody's action is not barred by the common law firefighter's rule as set forth in *Steelman,* and is not barred by the modifications to that rule in NRS 41.139.

### *Tort liability of owners and occupiers of land*

In the district court, Manny's and Peress also moved for summary judgment based on the argument that Manny's, and Peress as owners and occupiers of land, owed no duty of care to Moody and, if they did, they did not violate any applicable standard of care. Manny's and Peress contend that Moody was a trespasser on the property, and therefore no duty of care was owed to Moody. In the past, we have stated that generally no duty is owed by the occupant of property to a trespasser, except "not to wantonly or wilfully injure [the trespasser] or fail to exercise due care to prevent his injuries after his presence in a place of danger [is] discovered." Crosman v. Southern Pac. Co., 44 Nev. 286, 300, 194 P. 839, 843 (1921). Yet, the standard of care owed by owners and occupiers of land toward persons on that land has become rather murky in recent years.

Traditional landowner liability depended upon the status of the injured person as a trespasser, licensee, or invitee. *See* Early v. N.L.V. Casino Corp., 100 Nev. 200, 203, 678 P.2d 683, 684-85 (1984); Sierra Pac. Power Co. v. Rinehart, 99 Nev. 557, 560, 665 P.2d 270, 272 (1983); Brewer v. Annett, 86 Nev. 700, 702, 475 P.2d 607, 608 (1970). In 1985, however, in Turpel v. Sayles, 101 Nev. 35, 692 P.2d 1290 (1985), we adopted a doctrine of landowner liability for landlords independent of the status of the person injured on the land and free from the rigid categorization

which has been a vestige of the early common law. In *Turpel,* the plaintiff was injured when she attempted to warn residents of a fire which had broken out in a condominium unit owned by the defendant. *Id.* at 35-36, 692 P.2d at 1290. The plaintiff alleged that her injuries were proximately caused by the defendant's failure to install smoke detectors in the condominium units. *Id.* at 36, 692 P.2d at 1290. The defendant moved for summary judgment on the sole ground that the plaintiff was a mere licensee, to whom the defendant owed no duty of due care, and the motion was granted. *Id.* In reversing the grant of summary judgment, we quoted the following passage from Sargent v. Ross, 308 A.2d 528, 534 (N.H. 1973):

> Henceforth, landlords as other persons must exercise reasonable care not to subject others to an unreasonable risk of harm. A landlord must act as a reasonable person under all of the circumstances including the likelihood of injury to others, the probable seriousness of such injuries, and the burden of reducing or avoiding the risk. We think this basic principle of responsibility for landlords as for others 'best expresses the principles of justice and reasonableness upon which our law of torts is founded.' The questions of control, hidden defects and common or public use, which formerly had to be established as a prerequisite to even considering the negligence of a landlord, will now be relevant only inasmuch as they bear on the basic tort issues such as the foreseeability and unreasonableness of the particular risk of harm.

*Turpel,* 101 Nev. at 38, 692 P.2d at 1292. We concluded in *Turpel:*

> In accord with those courts which have discerned no sound policy reason in the modern social context for retaining the ancient exception for landlords or property owners from the general application of the basic principles of tort law, we find no basis for excusing the landlord in this case from the requirement that she defend the allegation that she has, through her negligence, been the cause of foreseeable injuries to the plaintiff for which she should assume liability. Nor do we see a basis in policy for excluding this plaintiff from the benefits of the rescue doctrine, as they would be applied in any other tort case, solely on the ground that the allegedly negligent defendant is a property owner.

*Id.* at 39, 692 P.2d at 1293.

In *Turpel,* we discussed Swift & Company v. Baldwin, 299

S.W.2d 157 (Tex.Civ.App. 1957), in which the plaintiff was injured while attempting to secure a sign he feared would fall on school children. The defendant attempted to rely on the plaintiff's status as an invitee to avoid liability. *Id.* at 160. We made the following statement concerning *Swift:*

> The [*Swift*] court refused to apply the concept [of the status of the injured person] on the basis that "[w]e do not think the question of 'invitee' or 'licensee' or 'no duty' is involved in this case. We think the question presented here was whether or not the school children were in a position of peril, and whether or not the defendant acted as a man of ordinary prudence in going to their rescue."

*Turpel,* 101 Nev. at 37, 692 P.2d at 1291 (quoting *Swift,* 299 S.W.2d at 160).

In 1986, in Galloway v. McDonalds Restaurants, 102 Nev. 534, 728 P.2d 826 (1986), we stated that the following jury instruction "embodies the law in Nevada as to the duty of landowners":

> An owner or occupant of land must exercise ordinary care and prudence to render the premises reasonably safe for the visit of a person invited on his premises for business purposes. An owner or occupant of land who knows, or in the exercise of reasonable care should know, of their dangerous and unsafe condition, and who invites others to enter upon the property, owes to such invitees a duty to warn them of the danger, where the peril is hidden, latent, or concealed, or the invitees are without knowledge thereof.

*Id.* at 537, 728 P.2d at 828. One year after Turpel v. Sayles, 101 Nev. 35, 692 P.2d 1290 (1985), we allude to a doctrine of landowner liability based upon the injured person's status upon the premises. In Ross v. Carson Construction, 106 Nev. 885, 803 P.2d 657 (1990), we also indicated that the common law status of a person as a trespasser on another's property may affect the person's ability to recover for personal injuries, but we "elect[ed] not to reach the issue of [the plaintiff's] status under the common law landowner liability classifications." *Id.* at 888-89, 803 P.2d at 659.

In 1989, in Wright v. Schum, 105 Nev. 611, 781 P.2d 1142 (1989), we relied on *Turpel.* In *Wright,* a tenant's pit bull dog escaped from the tenant's yard and mauled a young boy. *Id.* at 612, 781 P.2d at 1142. The plaintiff brought an action against the owner/landlord of the property, but this action was dismissed. *Id.* We held that the defendant could not be held liable *"as a landlord"* or "by reason of his status as a landlord." *Id.* at 613, 781 P.2d at 1143. We stated in *Wright:*

> In *Turpel* we observed correctly that merely because a person had the legal status of being an owner or landlord, such person did not enjoy immunity from tort liability. As put in *Turpel*, there is no reason to except "landlords or property owners from the general application of the basic principles of tort law." [The land owner], obviously, "as other persons must exercise reasonable care not to subject others to an unreasonable risk of harm."
>
> The question in this case, then, is not whether [the land owner] is liable to [the mauled boy] *as a landlord*, but rather whether he is liable "as other persons" for the exercise of due care in not subjecting [the boy] to an unreasonable risk of harm.

*Id.* at 613-14, 781 P.2d at 1143 (footnote omitted; citations omitted). However, in a footnote in *Wright,* we analyzed *Turpel* as follows:

> Obviously the duty to install smoke detectors is related to [the condominium owner's] status as an owner or landlord, and there would be no duty apart from this status; still, *Turpel* is not a case of "landlord liability"; it is, as stated in the *Turpel* opinion, one of general tort liability.

*Id.* at 613 n.1, 781 P.2d at 1143 n.1.

We find the approach set forth in *Turpel* and those cases which follow it to be a more enlightened and equitable means for ascertaining liability. We therefore follow the lead of the California Supreme Court in Rowland v. Christian, 443 P.2d 561 (Cal. 1968), and abandon former principles of landowner liability based upon the status of the person injured on the premises, such as whether that person is a trespasser, licensee, or invitee. In *Turpel,* we stated:

> "Common law rules defining a landowner's liability in negligence to people coming onto the land reflected the needs of an agrarian society," in which the "landowner was a petty sovereign within his boundaries," and "[t]he character of his duty to an injured party varied with the party's relationship with the sovereign," whether trespasser, licensee, invitee or tenant.

*Turpel,* 101 Nev. at 37-38, 692 P.2d at 1292 (quoting Young v. Garwackie, 402 N.E.2d 1045, 1047 (Mass. 1980)). We also stated, "[A]s other courts have concluded, we are not satisfied that the traditional principles of property law are appropriately applied to analysis of a tort claim in a twentieth century urban residential setting." *Turpel,* 101 Nev. at 37, 692 P.2d at 1291.

In *Rowland,* the California Supreme Court rejected a rigid classification system based on "status" in determining landowner liability. *Rowland,* 443 P.2d at 568. The court stated:

> One of the areas where this court and other courts have departed from the fundamental concept that a man is liable for injuries caused by his carelessness is with regard to the liability of a possessor of land for injuries to persons who have entered upon that land. It has been suggested that the special rules regarding liability of the possessor of land are due to historical considerations stemming from the high place which land has traditionally held in English and American thought, the dominance and prestige of the landowning class in England during the formative period of the rules governing the possessor's liability, and the heritage of feudalism.
>
> The departure from the fundamental rule of liability for negligence has been accomplished by classifying the plaintiff either as a trespasser, licensee, or invitee and then adopting special rules as to the duty owed by the possessor to each of the classifications. . . .

*Id.* at 564-65 (citation omitted). The California Supreme Court recognized that rules of liability based upon the "status" of the plaintiff is neither strictly logical nor just. We find the following language from *Rowland* particularly persuasive:

> A man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose. Reasonable people do not ordinarily vary their conduct depending upon such matters, and to focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and humanitarian values. The common law rules obscure rather than illuminate the proper considerations which should govern determination of the question of duty.

*Id.* at 568. Accordingly, the California Supreme Court saw fit to abandon such antiquated rules for determining liability, stating:

> [W]e are satisfied that continued adherence to the common law distinctions can only lead to injustice or, if we are to avoid injustice, further fictions with the resulting complexity and confusion. We decline to follow and perpetuate such rigid classifications. The proper test to be applied to the liability of the possessor of land . . . is whether in the

management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative.

*Id.*

We discern no justification for continuing to adhere to rules of land owner and occupier liability based upon the artificial classification of plaintiffs as either trespassers, licensees, or invitees, and hinging recovery on this status. We conclude that all persons in this society have an obligation to act reasonably and that an owner or occupier of land should be held to the general duty of reasonable care when another is injured on that land. While a reasonable person would take greater precautions to protect from harm's way one invited onto his or her premises than he or she would to protect a trespasser, the status of the injured party may not be the dispositive factor. Rather, determinations of liability should primarily depend upon whether the owner or occupier of land acted reasonably under the circumstances. In the instant case, Moody's recovery should depend on the reasonableness of the use of the cable barrier under the circumstances rather than the status of Moody as a trespasser, licensee, or invitee at the time of the injury.

We hold that the district court erred in ordering summary judgment against Moody. We conclude, as a matter of law, that neither the firefighter's rule nor NRS 41.139 bars Moody's suit for personal injuries. We further conclude that there remains a genuine issue of material fact as to whether Manny's and Peress acted reasonably under the circumstances in erecting, or allowing to be erected, a cable barrier across the parking lot. Since, following Peress's dismissal from the action, Peress was rejoined in the litigation by Manny's as a third-party defendant, we conclude that any contentions as to Peress's dismissal are moot and we decline to address them further.

We have considered all other contentions on appeal and we conclude that they either lack merit or need not be addressed in light of this disposition. Accordingly, we reverse the order of the district court granting summary judgment against Moody and remand for further proceedings consistent with this opinion.

STEFFEN, YOUNG, SPRINGER and SHEARING, JJ., concur.